# Cutcliff *v.* McAnally.

88 507
.109 400

*Action by Contractor to enforce Statutory Lien.*

1. *Mechanic's lien on separate property of married woman.*—Since the enactment of the statute approved February 28th, 1887, the contracts of a married woman are required to be in writing, and made with the assent or concurrence of her husband expressed in writing (Code, §§ 2341-51); but she may nevertheless create a valid lien on her property, in favor of a mechanic or material-man, by her own verbal contract, without the assent or concurrence of her husband.

2. *Filing contractor's claim; limitation.*—Under the statutes now and heretofore of force (Code, 1886, § 3022; 1876, § 3444), the lien of an original contractor is waived and lost, unless his claim is filed in the office of the probate judge within six months "after the indebtedness has accrued," which means after it has become due and payable by the terms of the contract; and where there is an entire contract for the building of a house, which is destroyed by fire before its completion, the balance payable on completion becomes due and payable at once, if at all, and not at the time when, but for the accident, the building would have been completed.

3. *Contract for building house; destruction by fire before completion.* Under an entire contract for building a house, the contractor is not discharged by the destruction of the house by fire before its completion, nor can he recover the balance of the agreed price payable on completion.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAS. B. HEAD.

This action was brought by William Cutcliff, against Mrs. Catherine McAnally, a married woman, to enforce a statutory lien on a lot belonging to the defendant, for a balance of about $200 alleged to be due to plaintiff under a contract for building a house on the lot; and was commenced on the 14th April, 1888. The contract for the building of the house was reduced to writing, dated June 6th, 1887, and signed by the plaintiff and the defendant, but not by Patrick McAnally, the defendant's husband. The contract price was $2,150, payable as follows: "$400 when framed and raised, $400

when the brown mortar is on, $400 when plastering is finished, brick work and one coat of paint, and the balance when complete and the house turned over to the party of the first part." The building was destroyed by fire, September 12th, 1887, never having been finished; and the evidence showed that the defendant's husband willfully set fire to it. On the 15th October, 1887, plaintiff and defendant had a settlement or compromise of the disputed indebtedness, and she executed to him her note for $200, as the balance; but her husband did not sign the note. On the 9th April, 1888, the plaintiff filed his claim for a statutory lien as contractor. The complaint alleged that the claim was due on the 19th December, 1888; and the plaintiff testified on the trial, "that the house would not have been completed until about two months after the same was burned."

The defendant pleaded her coverture, and that the contract was not signed by her husband, to which plea the court sustained a demurrer; and also the statute of limitations governing mechanic's claims of a statutory lien, on which issue was joined. On all the evidence, the court charged the jury, that they must find for the defendant. The plaintiff excepted to this charge, and he here assigns it as error.

R. L. Thornton, for appellant.

Brickell, Harris & Eyster, and Ferguson & Houghton, *contra*.

SOMERVILLE, J.—1. The first question raised on the record in this case is, whether a married woman can create a mechanic's or material-man's lien on her separate estate, by her verbal contract, and without the written assent of her husband; or, whether, on the contrary, her legal capacity to contract for such a lien is limited by section 2346 of the present Code, which restricts her general powers to contract as a *feme sole* to an instrument in writing, with the superadded assent of her husband, also expressed in writing. The case of *Wadsworth v. Hodge*, decided at the present term (*ante*, p. 500), settles this question against the contention of the appellee. We there held, that a married woman could charge her separate estate under the provisions of the mechanic's lien law, as embraced in sections 3018-3048 of the Code (1886), by her *oral* contract for labor or improvements, and without her husband's consent, written or otherwise.

[Cutcliff v. McAnally.]

Our ruling was placed upon the broad basis of the statute itself, which provides for the creation of liens of this nature by an oral contract, and expressly authorizes such a contract to be made by a married woman.—Code, 1886, § 3046.

2. A second point of inquiry is, whether the requisite written statement of the plaintiff's demand was filed in the office of the judge of probate within the time prescribed by statute. If not, the lien is admitted to be barred and lost. The contract in this case was made under the Code of 1876, and must, therefore, be governed by its provisions. The statute then required every original contractor to file his demand within six months after the indebtedness had "accrued," and actions to enforce the lien were required to be commenced within ninety days after filing such demand.—Code, §§ 3444, 3454. The present Code contains the same provisions as to filing, limiting the time to six months after accrual of the indebtedness; and declares further that, with certain exceptions, all liens arising under this law "shall be deemed lost, unless suit for the enforcement thereof is commenced within six months after the maturity of the entire indebtedness secured thereby."—Code, 1886, §§ 3022, 3041. We are concerned here, however, only with the question of filing. Was the statement of the demand filed with the judge of probate within six months after the indebtedness *accrued*, within the meaning of the statute?

In this connection the word "accrued" is evidently used in the sense of having come to maturity, so as to be due and payable. Or, in other words, it indicates the time when the work contracted for is completed, or the materials furnished, one or both, as the case may be, and the account for the same is past due. This is implied in the further description of such indebtedness, thus required to be filed, as "a just and true account of the demand *due* him."—Code, 1876, § 3444. Requiring suit to be instituted on such claim within ninety days after filing, moreover, implies that the demand must have been due and payable when filed.

It has accordingly been held, both under our own statute, and the similar one in Missouri, that where work is done and materials furnished under one continuous, or running contract, the indebtedness created is said to accrue from the last item of the account, and the time of filing must be computed from this date. But, if there be several distinct and independent contracts, separately made for the different parts of a building—as, for example, one for the brick work, another

[Cutcliff v. McAnally.]

for the wood work, and a third for the painting—each must be filed within the time of its own separate accrual.—*Lane & Bodley Co. v. Jones,* 79 Ala. 156; *Livermore v. Wright,* 33 Mo. 31; Misso. Code, 1879, § 3192; *Pages v. Bettes,* 17 Mo. 366; 2 Jones on Liens, §§ 1432–1437; *Peck v. Bridwell,* 10 Mo. Ap. 524; *Henry v. Hinds,* 18 *Ib.* 497.

It is an uncontroverted fact in this case, that the building in process of erection was never completed, but was destroyed by fire, when approaching completion, without the fault of the plaintiff, on September 12th, 1887,—having been willfully burned by the husband of the defendant, who was superintending the work as her agent. The sum sued for—something over $200—was a percentage retained by the defendant, as usual in such contracts, as a security for the faithful completion of the work, and it was not due to plaintiff until the house was completed. On the 15th of October, 1887, the parties compromised the indebtedness, and, as a convenient mode of liquidating the same, the defendant executed her note to the plaintiff for $200, payable in sixty days after date. The required statement of the demand was filed April 9th, 1888.

The defendant contends that the entire demand became due on September 12th, 1887—when the progress of the work was interrupted by the destruction of the house. If this be true, the filing of the statement on the 9th of April following was too late, the lapse of time which had intervened being more than the statutory limit of six months. The plaintiff, on the contrary, contends that the filing was in time, because the sum sued for would not have become due until the house was completed, and the house would not have been completed until about two months after the burning. The case, in this aspect, thus turns on the inquiry, when did this demand accrue, or become due and payable.

The plaintiff's contract, made in writing on June 6th, 1887, was to build for the defendant a house, and furnish the materials for a stipulated compensation of $2,150, payable in several specified installments according to the progress of the work, the last, including the sum sued for, not being payable until the completion of the building. If the destruction of the house before completion excused the performance of the contract by plaintiff to build it, and gave him any right of action on a *quantum meruit,* or *quantum valebat,* and such claim included the retained percentage here sued for, we are of the opinion such demand accrued

[Cutcliff v. McAnally ]

at the time of the fire, and not afterwards. Whatever right of action the plaintiff had, he acquired then, not afterwards. The note given by the defendant was void as a contract by reason of her coverture, and, being made without her husband's written consent, it imposed on her no liability additional to that already existing.—Code, 1886, § 2346. It was no payment of the debt, and the offer is made in the complaint to deliver the paper up for cancellation, which is all that could be required.—*Lane & Bodley Co. v. Jones*, 79 Ala. 156. The filing was, therefore, too late, and the claim, if it ever had any validity, was extinguished.

3. But there is another view of the case which would justify the general affirmative charge given by the court, to find for the defendant. The contract of the plaintiff, to construct the house on the defendant's premises, was not excused by the destruction of the house by fire while in process of completion. This is upon the settled principle, that when one, by his own voluntary contract, creates a lawful duty or charge upon himself, he is bound to make it good, if he may, despite obstructions interposed by accident, or inevitable necessity, because he might have provided against the difficulty by his contract. If the obligation is created by *law*, a different rule would prevail.

In *School District v. Dauchy*, 25 Conn. 530; 68 Amer. Dec. 371, where defendant was sued for non-performance of a contract to build a school-house for the plaintiffs, he was held liable in damages, although performance was prevented by the accidental destruction of the house by lightning a few days before its completion. A like ruling was made in *Adams v. Nichols*, 19 Pick. 275; 31 Amer. Dec. 137, where one who had agreed to build a house on another's land, was held not to be released from his obligation by the destruction of the house by fire after it had been nearly completed. In *Andrews v. Duvant*, 11 N. Y. (1 Kern.) 35; 62 Amer. Dec. 55, it was held that a contract for the construction of a vessel did not pass title, until the entire work was completed and the vessel delivered; and that the fact that the work was inspected and approved by the purchaser as it proceeded, and installments of the agreed price were paid from time to time, made no difference. This case was approved in principle by this court in the recent deliverance of *Commercial Fire Ins. Co. v. Capital City Ins. Co.*, 81 Ala. 320, and the rule was applied to a contract for the construction of a house on the land of another, the performance of which was

[Youngblood & Ehrman v. McAnally.]

prevented by the accidental destruction of the house by fire before completion. Of course, there may be cases where a contract to build is not entire, and the stipulations of the promisor to pay at specified dates, as the work progresses, are absolute, and not dependent on the completion of the building; and in such cases, the *pro rata* value of the materials furnished and the work may be recovered.—*Partridge v. Forsythe*, 29 Ala. 200; *Drake v. Goree*, 22 Ala. 409; Benjamin's Principles of Contr., 131.

The present case differs entirely from another class, where one agrees to sell and convey a house and lot, and before execution of the deed the house is destroyed by accidental fire. In such event, there is a failure of consideration, and the vendor can not recover or retain any part of the purchase-money.—*Wells v. Calnan*, 107 Mass. 514; 9 Amer. Rep. 65. So, where a contract is made for the sale and delivery of specific articles of personal property, the accidental destruction of the property before delivery, without fault of the vendor, excuses performance, and discharges the contract. *Dexter v. Norton*, 47 N. Y. 62; 7 Amer. Rep. 415. See, also, *The Tornado*, 108 U. S. 342, 351.

If then the plaintiff was not entitled to recover in this case until full performance of his contract, the destruction of the building by fire not discharging or excusing him, he would have been liable in damages to the defendant for non-performance. The sum sued for was presumptively retained for indemnity for these damages, and could not be recovered back until the full performance by the plaintiff of his obligation to complete the building, which still rested on him, and which he has failed to perform.

In any aspect of the case, the court did not err in the charge given, and the judgment must be affirmed.