158 So.2d 678

**HOME FEDERAL SAVINGS & LOAN ASSOCIATION**

v.

**William E. WILLIAMS.**

**6 Div. 900, 901, 902.**

Supreme Court of Alabama.

Dec. 12, 1963.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

Corretti & Newsom, Birmingham, for appellee.

HARWOOD, Justice.

This is an appeal from final judgments rendered in the Circuit Court of Jefferson County, Alabama, in three suits in Equity, in favor of the complainant, William E. Williams, doing business as Ace Plumbing Company against Home Federal Savings & Loan Association, John O. Russell and Edith A. Russell. John O. and Edith A. Russell have not appealed. These are mechanics lien suits by complainant against Russell, the former owner and builder and Home Federal, the mortgagee who had foreclosed. There are three records which have been filed with the Court; one in each of cases 121–678 (Lot No. 93), 121–679 (Lot No. 61), and 121–680 (Lot No. 79). The cases were tried together and the record of the trial proceedings, by stipulation, are found only in the record in case 121–678. The points raised in each of the cases are sufficiently similar so that reference will be made only to the record in case 121–678 (Lot No. 93), unless otherwise specified. Final judgment was entered against the respondents Russell in the amount of $1,-189.67 in case 121–678, $1,368.25 in case 121–679, and $1,420.81 in case 121–680, and against the respondent Home Federal Savings & Loan Association to the extent that a lien was declared in favor of the complainants on certain properties which were owned by respondent Home Federal. Home Federal filed an application for rehearing. This application was overruled by the Court. From such final judgment and also the decree of the circuit court overruling the application for rehearing respondent Home Federal appealed by filing supersedeas bonds.

The complaints as originally filed and as amended upon being tested by demurrers, alleged that complainant and respondents Russell entered into a contract whereby complainant was to perform the plumbing necessary on three houses being built by the respondents Russell. The complainant

claims a lien for labor and materials on each house and lot (each suit demands a lien on a different piece of property). The complaints also allege that respondent Home Federal Savings & Loan Association made mortgage loans on the building and real estate described in the three complaints and that at the time complainant began furnishing labor and materials no money or funds had been disbursed from the mortgage loans.

The complaints then allege that the Russells made a sworn statement to the effect that all debts for labor and materials had been satisfied by them and that such statement was false.

The complaints further alleged that the last items of labor and materials were furnished on July 18, 1960. Complainant also averred that he had substantially completed his work and that the houses were ready for occupancy before the respondent Russell, executed the mortgage with respondent, Home Federal. Complainant also sets out what work he did on the three houses on the last day he was supposed to have worked there July 18, 1960. On Lot 93 (case 121–678) he alleged that he "replaced the brass on the laboratory (sic.) valves on the plumbing fixtures installed by him." On Lot 61 (case 121–679) he installed gas pipes at the request of Russell; on Lot 79, he, at the request of Russell, replaced part of the sewer lines.

The complainant prayed that a decree be entered in his favor against the Russells, that a lien be fixed on the three parcels of property and that his lien be declared prior to the mortgage of respondent Home Federal. As an exhibit to the complaint the lien claim of claimant was attached. This lien notice was filed on January 17, 1961.

The complaint, therefore, seeks a judgment against the Russells, a lien against the property and a determination of priorities as between Home Federal and complainant. The complaint is based presumably on Tit. 33, Sec. 37 et seq. of the Code although the Code sections are not mentioned in the complaint.

Thereafter respondent, Home Federal Savings & Loan Association, by answers as amended, denied that the complainant had filed a lien statement within six months from the time the last item of work or labor was performed or the last item of material furnished as required by Sec. 42, Tit. 33, Code of Alabama as amended. They also denied that complainant had filed suit for the enforcement of the liens claimed within six months after the maturity of the entire indebtedness secured thereby.

These answers set forth the position of the appellant-respondent and define the issues presented on this appeal. These issues are (1) that the work done on 18 July 1960 was not of such a nature as to be considered the last item of work done on the houses, but that actually the plumbing work had been completed at substantially earlier times and more than six months prior to the filing of the lien claims, and (2) the suits were not filed within six months after the maturity of the entire indebtedness sought to be secured by the lien, each of the two conditions being required by Sec. 42, Tit. 33, Code of Alabama 1940.

Sec. 42 of Tit. 33, Code of Alabama 1940, sets forth the time limitations for the filing of the claim for a mechanics lien and of the suit to enforce the same. This section provides:

"The lien declared in this article shall be deemed lost unless the statement referred to in the preceding section shall be filed by every original contractor within six months * * * after the last item of work or labor has been performed or the last item of any material, fixture, engine, boiler or machinery has been furnished for any building * * * under or by virture of any contract with the owner * * * and any suit for the enforcement thereof must be commenced within six months after the maturity of the entire indebtedness secured thereby."

■ Thus, to secure enforcement of his remedy the lien claimant must (1) file notice of his lien claim within six months, etc., and (2) commence suit within six months after the maturity of the entire indebtedness.

■ A debt is mature when it accrues so as to be due and payable. Cutcliff v. McAnally, 88 Ala. 507, 7 So. 331.

In the bills as amended the complainant averred that as to Lot 93 the mortgage ·of appellant was not made until 22 January 1960, at which time the improvements (plumbing) had been substantially completed and the residential dwelling house was ready for occupancy, and that at the time he had completed his contract with the Russells, but that he did, on 18 September 1960, at the request of Mr. Russell, return to the house and replace the brass lavatory valves on the fixtures.

As to Lot 79 the bill avers that the mortgage was executed on 15 October 1959, at which the improvements (plumbing) had been substantially completed and the house was ready for occupancy, and that he had completed his contract, but that on 18 September 1960 he did at the request of Mr. Russell return to said premises and replace part of the sewer line.

The same averment is in the bill pertaining to Lot 61, except that the mortgage was shown to have been made on 5 April 1960, and upon Mr. Williams return to the premises on 18 September 1960 he installed gas pipes on the premises.

At the hearing below Mr. Williams testified that he had known John O. Russell and his wife Edith for some years. They were engaged in constructing and selling homes. In the past he had installed the plumbing in some twenty-two houses for the Russells.

The contracts between himself and the Russells for the plumbing work on the premises involved in these proceedings had been oral.

The plumbing work on the house on Lot 61 was started around 1 December 1959, and was completed by 5 April 1960, except for hooking up a gas pipe to the furnace and installing a dishwasher and a water heater which was to be supplied by Williams. All of these items were in the plumbing contract.

It appears from all the evidence that Mr. Russell was to furnish the dishwasher but had never done so, and the same was never connected by Mr. Williams. The furnace was likewise to be furnished by Russell but he did not get out to the house until a few days before 18 July 1960.

Mr. Russell testified he asked that the dishwashers and hot water heaters not be installed until someone moved into the houses "because they get torn up."

The plumbing work was substantially completed in the house on Lot 93 by 22 January 1960, and on Lot No. 79 by 15 October 1959. Again in these two houses the dishwashers and hot water heaters were not installed.

No other material work was done until 18 July 1960 when, at Russell's request, Mr. Williams met Mr. Russell at the houses.

On that day he installed and connected the piping to the furnace in the house on Lot 61; he replaced a faucet on which apparently some acid had been dropped, in the house on Lot No. 93; and on Lot 79 he replaced a sewer pipe which had been broken in some unknown manner between the time it was installed in October 1959 and 18 July 1960.

Upon completion of this work on 18 July 1960, Mr. Williams gave to Mr. Russell a statement of the account between them.

Counsel for appellant, under an appropriate assignment of error, argues that under the above evidence the court erred in finding that the lien notice had been filed within six months after the last work had been performed, or materials furnished by Mr. Williams on 18 July 1960, were nothing

more than maintenance as required by the warranty of one year (see authorities cited 143 A.L.R. 1190), or were the performance of trifling matters unreasonably delayed and which should have been done at an earlier time (see Crane v. Ellis et al., 58 Or. 299, 114 P. 475), and cannot be asserted to defeat the terms of the statute as to the time within which the lien notice should have been filed.

We pretermit consideration of this point for the reason that we are clear to the conclusion that the suit was not filed within six months from the maturity of the debt.

It is true that both Mr. Williams and Mr. Russell asserted in their testimony that the account between them was an open and running account and was due and payable on 18 July 1960. However, these conclusionary assertions cannot avail if the evidence shows to the contrary.

Mr. Williams testified by deposition and confirmed the correctness of such depositional testimony when on the stand in the trial, that the contract between him and the Russells was oral, that he submitted statements to the Russells, and the last one was submitted on 18 July 1960.

Mr. Williams further testified that he had been paid $700 by Russell in October 1959, and $300 in January 1960; that in April 1960 Russell owed him $3,971 (the total balance involved in these three suits) and that "Mr. Russell had statements on it, and a number of telephone calls, and seeing him in person."

In April 1960 Mr. Russell promised to pay him $1500, but never did.

He had sent Mr. Russell a statement by April 1960 for $3,971, the total balance due on the three houses involved in these proceedings, which is also the total amount claimed in these three suits.

These written statements were reinforced by telephone calls demanding this balance due, and by personal visits. These trips started in March and April 1960.

Mr. Russell never said he was not paying because the work had not been completed, but the reason he gave for not paying was that he "just didn't have the money."

Mr. Williams further testified that he had "gone along" with Russell on his "speculative stuff," but was supposed to have been paid 50% of his charges upon roughing and setting the plumbing "and when they closed the loan, not necessarily when the house was sold, but when he closed the loan, or put the mortgage on it, then my money became due then, not when the house was actually sold, when the mortgage was put on it."

Mr. Russell, a witness for the complainant, testified on direct examination that he had never received a statement of account from Mr. Williams prior to 18 July 1960.

However, on cross examination Mr. Russell testified that there might have been statements prior to 18 July 1960, that he could not remember over a year about his dealings, and "I don't believe I could be sure one way or the other there."

The equivocal nature of Russell's testimony as to whether he had received statements from Mr. Williams in April 1960 renders its probative value nil.

Mr. Russell further testified that at the time he obtained the respective loans from the appellant company he had given sworn written statements to the appellant that all workmen had been paid, and that these statements were false.

Mr. Russell also testified that the three houses on the lots in question were substantially complete as to the dates of the mortgages covering each lot respectively, i. e., 15 October 1959, 22 January 1960, and 5 April 1960, and that he would have paid Mr. Williams in April 1960 if he had had the money.

Thus under appellee's evidence Mr. Williams rendered statements for the full account to Russell by April 1960, and had also contacted Russell by telephone and in

person in reference to the account; Russell had promised to pay him $1500 on the account in April, but never had; and the only reason ever assigned by Russell for not paying the account was that he did not have the money.

 As respects an account stated, an account is "rendered" when it is presented. Yarbrough v. Armour & Co., 31 Ala.App. 287, 15 So.2d 281.

To create an account stated, it is not essential that the account should be in writing. Lallande v. Brown, 121 Ala. 513, 25 So. 997. An account rendered, and not objected to within a reasonable time becomes an account stated, and the failure to object will be regarded as an admission of the correctness of the account. Joseph v. Southwark Foundry & Machine Co., 99 Ala. 47, 10 So. 327.

In the present case, not only was there a failure to object to the account, but a positive promise to pay $1500 on the balance in April 1960.

Under the undisputed evidence the account must be deemed to have been stated for the full balance due on the contract between Williams and Russell at least by or during April 1960, and therefore the entire indebtedness matured as of that time. This being so, the suit filed for the enforcement of the lien claim, filed on 17 January 1961, was not filed within six months of the maturity of the entire indebtedness, as required by Section 42, supra. This being so, the lower court erred in its findings that the suit was timely filed.

The usual presumption accorded the findings of a trial court hearing the evidence ore tenus, and sitting without a jury, cannot prevail if such evidence is undisputed, and the findings are erroneous in light of such undisputed evidence.

In Sorsby v. Woodlawn Lumber Co., 202 Ala. 566, 81 So. 68, it is stated:

"The lien the materialman or mechanic acquires is by virtue of the statutes only, and the requirements of the statutes as to acquiring *and enforcing* it must be pursued, else it is lost or does not exist." (Italics ours.)

The liens of appellee were lost by failure to pursue them by timely filing of the suits for their enforcement. The lower court therefore erred in adjudging that such liens existed and in ordering the foreclosure of the same.

For the errors above pointed out, the judgment and decree of the lower court is reversed and remanded to the lower court with instructions to enter a decree in accordance with this opinion.

Reversed and remanded with instructions.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.