PER CURIAM.
Talladega Foundry and Machine Company, Inc. (“Talladega Foundry”), sued Rutledge Industrial Corporation (“Rutledge”) for $66,910.56 it claimed was due on a stated account, and for work and labor done for Rutledge.[1] Rutledge filed a counterclaim alleging breach of express and implied warranties of merchantability and fitness for a particular purpose, as well as breach of contract. The jury returned a verdict for Talladega Foundry on both its complaint and Rutledge’s counterclaim, and awarded it $66,910.56. Rutledge appeals from the judgment entered on that verdict, arguing that the trial court erred in denying its motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.[2]
Talladega Foundry is a specialty item foundry and, pursuant to an agreement with Rutledge, specially manufactured various cast iron valve parts and fittings that Rutledge sold to utility companies. Under their arrangement, Rutledge was to keep its account current within 45 days from the receipt of invoices and Talladega Foundry was to give full credit to Rutledge for all rejected castings.
On August 15, 1988, Talladega Foundry sent a statement to Rutledge by certified mail showing a balance due of $87,143.56. The bill specifically stated, “If you have any problems or offsets with this account, please respond within ten (10) days.” Rut *437 ledge did not respond within 10 days or dispute the amount claimed. Instead, on August 29, 1988, it sent Talladega Foundry a check for $233 and, shortly thereafter, two checks for $10,000 each, reducing the amount claimed to $66,910.56.
On appeal, Rutledge essentially argues what it alleged in its counterclaim: That Talladega Foundry’s products were defective; that some of Rutledge’s customers rejected some of the valves (thereby causing Rutledge to lose those customers); and that Talladega Foundry failed to give Rutledge full credit for the returned items, as it had promised to do.
The law with regard to accounts stated is clear. “[A]n account stated ... is an agreement between parties who have had a previous transaction or transactions of a monetary character that the item or items of account representing such transaction or transactions and the balance struck are correct, together with a promise, express or implied, for the payment of such balance.” Martin v. Stoltenborg, 273 Ala. 456, 458, 142 So.2d 257, 259 (1962) (citations omitted). An account is “rendered” when it is presented. Home Federal Savings & Loan Association v. Williams, 276 Ala. 37, 158 So.2d 678 (1963). Furthermore, “[a]n account rendered, and not objected to within a reasonable time becomes an account stated, and the failure to object will be regarded as an admission of the correctness of the account.” Id., 276 Ala. at 43, 158 So.2d at 683 (citation omitted).
As mentioned earlier, the record shows that the August 15, 1988, statement was sent to Rutledge by certified mail; thus, Rutledge is presumed to have received it. “One of the elements of a prima facie case, a rendering of the statement of account, requires a factual showing that there was a proper mailing or evidence supporting a finding of mailing in due course.” Car Center, Inc. v. Home Indemnity Co., 519 So.2d 1319, 1323 (Ala.1988).
Regarding the mailing of the statement to Rutledge, Thomas Kochan, the manager of marketing and sales at Talladega Foundry, testified as follows:
“Q. Tommy, after having sent that statement [certified] mail and Rutledge Industrial having received it as shown by the green card from the post office, did you or anyone at Talladega Foundry, to your knowledge receive any kind of call or notice or anything, any kind of communication from Rutledge Industrial that they were claiming any more offset or claiming that the amount shown on that statement of $87,143.56 was not correct?
“A. No.
“Q. In fact, as you’ve already testified, were payments made on that after that time?
“A. Yes, they were.
“Q. It brought the balance down to the $66,910.56. Is that correct?
“A. That’s correct.
“Q. After all credits, all offsets, all payments, everything, what is your testimony of the amount that is due and owing to Talladega Foundry by Rutledge Industrial Corporation?
“A. $66,910.56.”
Even Rutledge’s general manager, Robert Bennett, conceded that Rutledge did not contest the figure shown on the statement:
“Q. ... Do you have anything in writing to show that you disputed or disagree with that amount of money that was due and owing on August 15th?
“A. I, myself, have nothing.”
It is apparent from the record that Rutledge was not entitled to either a J.N.O.V. or a new trial. A motion for J.N.O.V. tests the sufficiency of the evidence to support the verdict. King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714 (Ala.1987). In order for this Court to review the denial of a motion for J.N.O.V., the party seeking review must meet a two-pronged test:
“He must ask for a directed verdict at the close of all the evidence, specifying ‘insufficiency of the evidence’ (lack of proof) as a ground; and 2) he must renew this motion by way of a timely filed post-judgment motion for JNOV, again *438 specifying the same insufficiency-of-the-evidence ground.”
Id. at 716 (emphasis original) (citations omitted).
Although Rutledge moved for a directed verdict at the close of all of the evidence, its motion for directed verdict did not specify sufficiency of the evidence as a ground, nor did' its motion for J.N.O.V. Failure to comply with this test, however, does not preclude review of the denial of a motion for new trial. Id.
In this case, a new trial was not warranted, because the verdict was not against the great weight and preponderance of the evidence; it was, rather, plainly and palpably supported by the evidence. Olympia Spa v. Johnson, 547 So.2d 80 (Ala.1989). Talladega Foundry clearly proved that it had an account stated, the amount of which was not contested after the account was rendered. Furthermore, there was no evidence that Talladega Foundry failed to credit Rutledge’s account for any defective valves that Rutledge returned. Tom Kochan testified specifically that every item shipped back to the foundry was credited against Rutledge’s account and that nothing had been returned since October 1988. Even Robert Bennett, Rutledge’s only witness, admitted that Rutledge had received credit for everything it had returned:
“Q. The Foundry has given you credit for everything you have shipped back. Isn’t that correct?
“A. The way you are saying it, yes, sir.”
The trial court, therefore, did not err in denying Rutledge’s motion for J.N.O.V. or, in the alternative, new trial, and its judgment based upon the jury’s verdict is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS, STEAGALL and INGRAM, JJ„ concur.

. See Ex parte Rutledge Industrial Corp., 551 So.2d 948 (Ala.1989), for a previous proceeding in this case. That earlier proceeding involved a venue question.

. Rutledge also asserts error in the admission of a certain “quotation form,” which purportedly limited Talladega Foundry's liability for defective items it sent Rutledge to crediting Rutledge’s account; however, that exhibit is not in the record. Thus, the issue regarding admission of that form into evidence and its effect, if any, on Rutledge’s counterclaim are not reviewable. We will, therefore, confine our discussion to whether there was sufficient evidence to support the jury’s verdict or whether the verdict was against the great weight and preponderance of the evidence.