MADDOX, Justice.
This appeal involves a dispute over an alleged debt for legal services performed. The trial court entered a summary judgment in favor of the business manager of the law firm, the person to whom the alleged debt had been assigned.
As we view this appeal, the legal issues presented are: 1) whether a debt can be implied as a matter of law when the alleged debtor pays part of the debt and does not object to the amount listed in billing statements; and 2) whether a creditor, here a law firm, can validly assign a debt to another, here the firm’s business manager, and vest in that person the legal authority to institute, in his name, a legal action on behalf of the creditor.
In September 1991, the law firm of Arm-breeht, Jackson, DeMouy, Crowe, Holmes, & Reeves (hereinafter “Armbrecht, Jackson”) was approached by the appellant, Drayton Miller, and Charles W. Hanor, a patent attorney from San Antonio, Texas, about representing Miller and Packaging Concepts & Technologies International, Inc., Prototype Machinery Specialists International, Inc., Purification Chemicals International, Inc., International Sourcing Specialists, Inc., and Thermonics International, Inc. (collectively “the corporate defendants”), concerning claims against Miller and the corporate defendants by Thermarite Pty. Ltd., an Australia corporation, and George Barrett, an Australian citizen. Miller was the majority stockholder and president, and a member of the board of directors, of the corporate de- ' fendants during this time.
Armbrecht, Jackson undertook to represent Miller and the corporate defendants, and filed a lawsuit styled Drayton C. Miller, et al. v. Thermarite Pty. Ltd. and George Barrett, et al., which was subsequently removed to the United States District Court for the Southern District of Alabama. This representation lasted from September 1991 through July 1992, and Armbrecht, Jackson sent monthly statements to the defendants detailing the legal services rendered and the fees incurred. One of the corporate defendants, Thermonics International, Inc., partially paid these legal fees. From November 3, 1992, to December 9, 1993, Thermonics International, Inc., drew nine checks paying more than $52,000 to Armbrecht, Jackson. There allegedly remains an unpaid balance of $73,151.30.
The corporate defendants in this action assert that John Hall, an officer of CTIC, Inc., of San Antonio, Texas, retained the firm of Armbrecht, Jackson to represent the defendants in this litigation, and they state that Hall paid a retainer of $15,000 to Armbrecht, Jackson, which was held in trust, and promised to pay all future legal costs. Hall and CTIC, Inc., were investors in each of the defendant companies. No written contract was ever executed concerning the legal representation in the state action that was removed to federal court.
*73 In December 1993, the defendants in this action ceased making payments on the account. On April 29, 1994, Armbreeht, Jackson attempted to assign the claim for the unpaid balance to Alan D. Chapman, the firm’s business manager, and on May 2,1994, Alan D. Chapman filed a verified complaint alleging that the defendants, including Dray-ton Miller, in his individual capacity, owed $73,151.30 on an account stated between the defendants and Armbreeht, Jackson. Chapman also included two counts seeking a quantum meruit recovery. Miller and the corporate defendants answered on June 17, 1994. On November 3, 1994, the defendants amended their answer to include as1 an affirmative defense that the plaintiff, Alan Chapman, was not the real party in interest.
Subsequently, Chapman moved for a summary judgment based on the verified complaint. Miller and the corporate defendants filed a statement in opposition to the motion for summary judgment and an affidavit of Drayton Miller, in which Miller conceded that Armbreeht, Jackson had represented the defendants in the litigation, but stated that Hall had retained the firm and had agreed to pay all future legal fees arising out of the litigation. In his affidavit, Miller also challenged the sufficiency of the assignment of the alleged debt to Chapman and questioned Chapman’s capacity to sue.
The trial court held a hearing on the plaintiffs summary judgment motion on November 29, 1994; it entered a summary judgment in favor of Chapman and entered its findings in an “Order and Judgment,” which reads, in pertinent part, as follows:
“1. From the period of September, 1991 through July, 1992 Armbreeht, Jackson, DeMouy, Crowe, Holmes & Reeves, represented Drayton Miller, Packaging Concepts & Technologies International, Inc., Prototype Machinery Specialists International, Inc., Purification Chemicals International, Inc., International Sourcing Specialists, Inc., and Thermonics International, Jnc. (collectively ‘Defendants’) in a lawsuit styled Drayton Miller, et al. v. Thermarite Pty. Ltd. and George Barrett, et al., CV-91-0892-P-M in the United States District Court for the Southern District of Alabama.
“2. During this time Armbreeht, Jackson, DeMouy, Crowe, Holmes & Reeves performed legal services and incurred expenses as a result of the representation-of the Defendants.
“3. The Defendants were sent monthly statements for legal services rendered and fees incurred by Armbreeht, Jackson, De-Mouy, Crowe, Holmes & Reeves.
“4. The Defendants received the monthly statements and never objected, in whole or in part, to the statements for legal services rendered and fees incurred.
“5. The Defendants made nine partial payments on the account for legal services and expenses incurred.
“6. There remains an unpaid balance of the account in the amount of $73,151.30.
“7. On April 29, 1994, Alan D. Chapman was assigned the account of Defendants in this action by Armbreeht, Jackson, DeMouy, Crowe, Holmes & Reeves, L.L.C. Alan D. Chapman is the Office Manager for Armbreeht, Jackson, De-Mouy, Crowe, Holmes & Reeves, L.L.C.
“8. On May 2, 1994, Plaintiff initiated this action by filing a verified Complaint against Defendants pursuant to Ala.Code § 12-21-111.
“9. Defendants did not file an affidavit denying the correctness of the account.
“WHEREFORE, after considering the pleadings and arguments of the parties, the Court finds that Plaintiffs Motion for Summary Judgment is due to be granted.
“It is hereby ORDERED, ADJUDGED AND DECREED that (1) Summary Judgment be and [it] hereby is granted in favor of Alan D. Chapman against all Defendants; (2) Judgment is hereby entered in favor of Plaintiff against all Defendants in the amount of $77,420.13, which amount includes pre-judgment interest at the rate of 6% per annum pursuant to Ala.Code § 8-8-8; and (3) Defendants are hereby ordered to pay costs to Plaintiff.”
The defendants appealed from that summary judgment.
*74 The law is settled that “[i]n reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact” and whether the movant was “entitled to a judgment as a matter of law.” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c) A.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Our review is further subject to the rule that in reviewing a summary judgment this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
After carefully considering the contentions of both parties and the facts of this case, and viewing the evidence in a light most favorable to the defendants, we conclude that the summary judgment was not proper. The judgment must be reversed and the cause remanded.
The Court of Civil Appeals summarized the nature of an account stated in University of South Alabama v. Bracy, 466 So.2d 148, 150 (Ala.Civ.App.1985):
“An account stated is a post-transaction agreement. It is not founded on the original liability, but is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount. Martin v. Stoltenborg, 273 Ala. 456, 142 So.2d 257 (1962). It is as if a promissory note had been given for the balance due. Ingalls v. Ingalls Iron Works Co., 258 F.2d 750 (5th Cir.1958).
“A prima facie ease on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debt- or; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability. Ingalls v. Ingalls Iron Works Co., supra; Barber v. Martin, 240 Ala. 656, 200 So. 787 (1941). The debtor’s admission to the correctness of the statement and to his liability thereon can be express or implied. An account rendered, and not objected to within reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account. Home Federal Savings & Loan Association v. Williams, 276 Ala. 37, 158 So.2d 678 (1963); Joseph v. Southwark, 99 Ala. 47, 10 So. 327 (1891).”
See also Car Center, Inc. v. Home Indem. Co., 519 So.2d 1319 (Ala.1988); Karrh v. Crawford-Sturgeon Insurance, Inc., 468 So.2d 175 (Ala.Civ.App.1985).
A review of the record shows there is a genuine issue of material fact relating to the alleged debt, specifically relating to the defendants’ liability to pay the debt. Although an account stated is not based on original liability, it involves only the parties to an original account, Martin v. Stoltenborg, 273 Ala. 456 at 459, 142 So.2d 257 at 258 (1962). The payment by the defendants in this case, or by one of those defendants, of a portion of the debt does not, as a matter of law, create liability unless the defendants were parties to the original agreement— whether they were is a fact question on which the parties disagree. The defendants contend that Hall, not the defendants, entered into the agreement with Armbrecht, Jackson. Although the legal representation was on behalf of the defendants, Miller stated in his affidavit that Hall obligated only himself to pay the debt; Miller described a meeting between Hall and attorneys from Armbrecht, Jackson, as follows:
“5. At that meeting, Mr. Hall agreed to retain Armbrecht, Jackson et al., in a matter concerning the defendant companies *75 and myself. He agreed to pay a retainer fee of $15f000 to Armbrecht, Jackson et al. and to pay all future legal fees in the matter.
“6. To the best of my recollection, there was no written fee agreement executed at that meeting between any parties and I have no recollection of any written fee agreement ever executed between the Defendants in the instant lawsuit and Arm-brecht, Jackson, DeMouy, Crowe, Holmes and Reeves.”
Based on this evidence, we find a genuine issue of material fact as to whether the defendants were obligated to pay the debt or became obligated by implication based on the fact that they failed to object to either the statements suggesting their liability or to the amount of the obligation, and based on the further fact that one corporate defendant paid a portion of the debt.
Assuming, without deciding, that Miller could obligate the corporate defendants, the record suggests nothing that would obligate Miller in his individual capacity to pay the alleged debt. All billing statements sent by Armbrecht, Jackson were to “Drayton G. Miller, President” of Thermonics International, Inc., and Miller refused to sign a promissory note obligating himself to pay the debt. This alone, viewed in a light most favorable to Miller, constitutes substantial evidence that he did not intend to become personally liable for the debt, and this “would defeat the motion for summary judgment.
The defendants also contend that the plaintiff, Alan Chapman, cannot prosecute this claim because, they contend, the assignment of this claim to him was invalid and, thus, Chapman is not the real party in interest. In his brief, Chapman contends that this issue was not raised by the defendants in the trial court, but the record shows that the defendants raised the issue in their amended answer. Having addressed the legal question we believe to be dispositive of this appeal, we decline to address the validity of this assignment or whether Chapman was the real party in interest.
Based on the foregoing, we hold that the trial court erred in entering Chapman’s- summary judgment. We reverse that judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and SHORES, KENNEDY, and COOK, JJ., concur.