[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13143
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 9, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:10-cv-02992-IPJ

COMPASS BANK,
an Alabama banking corporation,

Plaintiff - Counter
Defendant - Appellee,

versus

YAACOV JACK LIMON,
an individual,
MILTON LOVE,
an individual,
MICHELLE HARRIS,
an individual,

Defendants - Counter
Claimants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 9, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Appellants Yaacov Jack Limon, Milton Love, and Michelle Harris (the "Guarantors") appeal from the final judgment of the district court in favor of Compass Bank ("Compass"). Compass's action alleged claims for breach of guaranty agreements and for account stated against the Guarantors after they defaulted on their guaranties of a $3,500,000 loan that Compass had made to LYM, LLC ("LYM") to finance a real estate development in Madison County, Alabama. On appeal, the Guarantors argue that: (1) the district court erred in granting summary judgment on Compass's account stated claim; (2) the district court clearly erred in calculating damages; and (3) the district court erred in dismissing the Guarantors' counterclaim. After careful review, we affirm.

We review de novo the district court's grant of a summary judgment motion, viewing all evidence and reasonable factual inferences in the light most favorable to the nonmovant. Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994). We review a district court's factual findings only for clear error. Fed. R. Civ. P. 52(a)(6). A "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

2

conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quotation omitted).

The undisputed facts are these. In February 2008, LYM, LLC obtained a $3,500,000 loan from Compass to finance a 127-acre residential real estate development in Madison County, Alabama. In exchange for making the loan, Compass received a signed promissory note under which LYM promised to repay the loan with interest (the "Note"), and a mortgage on the real property. In order to secure the obligations of LYM to Compass, the Guarantors executed and delivered to Compass a guaranty agreement (the "Guaranty"), unconditionally guaranteeing, without limitation, payment of all indebtedness owed by LYM to Compass, whether existing at the time of execution or arising thereafter. Pursuant to the terms of the Guaranties, the Guarantors agreed to pay "attorneys' fees and all other costs and expenses" incurred by Compass in its enforcement of the Guaranties. The Note matured on February 17, 2010, pursuant to its terms, and is in default for failure to make payment when due. No payment has been made on the Note.

In a letter to the Guarantors dated March 9, 2010 (the "Demand Letter"), Compass (1) gave notice to Guarantors that the Note had matured and (2) made demand for payment. On March 30, 2010, Compass sent the Guarantors a letter (the "Discussion Letter") stating that Compass was "willing to discuss potential payment

3

alternatives" in exchange for a signed copy of the letter. Each of the Guarantors executed a copy of the Discussion Letter. In Paragraph 5 of the Discussion Letter, the Guarantors acknowledged and agreed to all amounts due and owing under the Note and the Guaranty, and waived "any and all defenses to the [i]ndebtedness owed pursuant to, without limitation, the Note and the Guaranties." Paragraph 6 of the Discussion Letter released Compass of "of and from any and all claims, counterclaims, suits, causes of action, damages, demands, costs, expenses, and compensation" arising from the Loan Documents. The Discussion Letter also provided that "the amount due under the Note was $3,330,231.21, plus costs of collection, including, but not limited to, attorneys' fees, and that interest, late fees and costs of collection, including but not limited to, attorneys' fees, continue to accrue."

After negotiating for several months with LYM and the Guarantors, Compass offered to extend the Note. Loan documents for the proposed extension of the Note were mailed to LYM, but executed loan documents were never returned to Compass and no payments were made. After sending a second demand letter to the Guarantors, Compass instituted foreclosure of the real estate mortgage securing the Note. To date, the Guarantors have not satisfied their obligations to Compass. Compass brought this suit to satisfy the Note.

Following motions and briefing by the parties, the district court granted summary judgment to Compass on the Guarantors' counterclaims that Compass breached the loan agreement, and also granted summary judgment to Compass as to liability on its claims for breach of the guaranty agreements and for account stated. After an evidentiary hearing, the district court entered judgment of damages for Compass on their claims. This timely appeal follows.

First, we are unpersuaded by the Guarantors' argument that the district court erred in granting summary judgment on Compass's account stated claim. Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact, so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Genuine disputes of fact exist when the evidence is such that a reasonable jury could return a verdict for the non-movant. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Factual issues are considered genuine when they have a real basis in the record. Id. Moreover, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an essential element of its case, and on which it bears the burden of proof at trial. Acevedo v. First Union Nat'l Bank, 357

F.3d 1244, 1247 (11th Cir. 2004). "[I]nferences based upon speculation are not reasonable," and may not defeat a motion for summary judgment. Marshall v. City of Cape Coral, Fla., 797 F.2d 1555, 1559 (11th Cir. 1986). Also, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004).

An account stated is an agreement between parties who have had previous monetary transactions. Karrh v. Crawford-Sturgeon Ins., Inc., 468 So.2d 175, 176. A prima face case is established when the plaintiff proves three elements: "(1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability." Univ. of South Alabama v. Bracy, 466 So.2d 148, 150 (Ala. Civ. App. 1985) (citing Ingalls v. Ingalls Iron Works Co., 258 F.2d 750 (5th Cir. 1958)).[1] An account stated claim is founded not on the original liability between parties, "but rather on the defendant's admission (which can be express or implied) that a definite sum is due." Karrh, 468 So.2d at 176.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6

Here, the Guarantors do not dispute that they signed the Guaranties, breached the Guaranties, and later signed the Discussion Letter. The Discussion Letter laid out the exact amount owed by the Guarantors -- $3,330,231.21, plus costs of collection, including attorneys' fees, and accruing interest, late fees and costs of collection. The Discussion Letter therefore amounted to a statement of account between the parties, and by signing the Discussion Letter, the Guarantors came to a meeting of the minds as to the amount owed, and further, admitted to their liability in exchange for Compass's agreement not to foreclose on the property or seek to collect from the Guarantors. Compass therefore established its account stated claim.

As for the Guarantors' argument that the amount stated in the Discussion Letter was insufficient to constitute an "account stated" and to base a "meeting of the minds" because the letter only provided the final amount due, it was sufficient under Alabama law. In fact, the Alabama courts have held that when an attorney writes a letter demanding payment of a simple amount of a claim, he renders an account, and when the debtor fails to object to the rendered account within a reasonable time, it becomes an "account stated." See Home Fed. Sav. & Loan Assoc. v. Williams, 158 So. 2d 678, 683 (Ala. 1963) ("An account rendered, and not objected to within a reasonable time becomes an account stated, and the failure to object will be regarded as an admission of the correctness of the account."); Yarbrough v. Armour & Co., 15

7

So. 2d 281, 281 (Ala. Ct. App. 1943) ("On October 24, 1941, appellee's attorney, who had the account for collection, wrote a letter to 'Yarbrough Bros.', stating the amount of the claim at $89.74, and threatening suit unless satisfaction were promptly made. (This, when received by the addressee, was a sufficient rendition of the account. 1 C.J.S., Account Stated, p. 701, § 19. 'An account is "rendered" when it is presented.') . . . Where the debtor agrees with the creditor as to the amount and promises to pay it, it becomes, in the absence of mistake or fraud, an account stated, although the debtor may subsequently change his mind.").

By the same token, the Guarantors' signing of the Discussion Letter, providing the amount due, and their receipt of more time with Compass's money without collection efforts established a meeting of the minds. See generally Ex parte Renovations Unlimited, LLC, 59 So. 3d 679, 684 (Ala. 2010) ("[A] person who signs a contract is on notice of the terms therein and is bound thereby, even if he or she fails to read the document.") (quotation omitted). The Guarantors also attempt to refute any meeting of the minds by asserting that they were tricked into signing the Discussion Letter by the promise of good faith negotiations on an extension of the loan. But because the undisputed evidence in the record shows that a Compass vice president attempted to negotiate an extension with LYM, and that Compass sent loan documents offering an extension in exchange for an immediate interest payment of

8

$400,000, the Guarantors' conclusory statements are insufficient to defeat summary judgment.[2]

We also reject the Guarantors' argument that the district court clearly erred in calculating the damages of the account stated claim. For the evidentiary hearing that the Guarantors requested, Compass submitted 55 pages of evidence, including a second affidavit from senior vice president Linda Garcia, a daily ledger of the interest charges, appraisals, and additional advances, property taxes, and legal fees. This information showed that an affidavit submitted by Guarantor Limon used the wrong interest rate and failed to include numerous collection expenses. In response, the Guarantors submitted no evidence. The trial court therefore did not clearly err in finding that Compass's evidence was accurate and entering a judgment for Compass for $1,850,708.37.

As for the Guarantors' argument that Compass's evidentiary submission incorrectly included an advance of $41,431.94 and double charged interest for a twenty-day period, we are unpersuaded. Compass submitted an affidavit of its vice president explaining that the $41,431.94 was an amount of the note that Compass had not advanced, but held in reserve to pay interest, and that when LYM, LLC and the

---

[2] Because the Guarantors signed the Discussion Letter providing an amount due, and did not object to its correctness at the time, whether this amount was inconsistent or inaccurate goes to the damages, rather than the liability, of an account stated claim.

9

Guarantors failed to pay any interest, Compass applied that amount to the principal of the note. Compass's evidentiary submission further shows that it did not double charge any interest, but rather, after applying the $41,431.94 of unpaid interest to principal, then computed the interest on that principal beginning on the date the entire note was due. The Guarantors have offered no evidence to dispute these explanations.

Nor have the Guarantors offered any evidence to support their claim that the charges for three appraisals on the property were unnecessary and unreasonable, or that the attorney fees Compass paid to collect on the loan they did not pay were "outrageous" and "incredibly excessive." Given the lack of evidence rebutting Compass's evidentiary showings, we cannot conclude that the trial court clearly erred in calculating the damages due to Compass.

Finally, we find no merit to the Guarantors' argument that the district court erred in dismissing their counterclaim when it found that the Guarantors had expressly waived any counterclaim by signing the Discussion Letter, which, say the Guarantors, is a contract of adhesion, an illusory contract, and one they were tricked into signing.[3] In order to escape a contract on the ground that it is a contract of

---

[3] As an initial matter, the district court properly treated the motions to dismiss as motions for summary judgment when it considered evidence outside the pleadings. Indeed, before doing so, it gave the requisite notice to the parties by issuing a separate order stating it would treat that motion to dismiss as a motion for summary judgment because it would consider evidence outside the pleadings. See Fed. R. Civ. P. 12(d). We also dispose of the Guarantors' claim that the Discussion Letter was not authenticated since they did not object before the district court and

10

adhesion, a party must show that it was "offered on a 'take it or leave it' basis" and that they had "no meaningful choice in the acquisition of the goods or services.'" Briarcliff Nursing Home, Inc. v. Turcotte, 894 So.2d 661, 667 (Ala. 2004). As the guarantors of a $3.5 million note for a limited liability company, the Guarantors have presented no evidence that they had no meaningful choice in signing the Guaranty.

Nor have they shown that they were tricked into signing the contract or that it was illusory, which means that it "confer[s] no legal enforceable rights upon either party." United Butane Sales, Inc. v. Bessemer-Suburban Gas Co., 281 Ala. 664, 665 (Ala. 1968). As the record shows, it is undisputed that on March 30, 2010, LYM was in default on the loan and Compass had the right to immediately pursue collection from the Guarantors. It is undisputed that when the Guarantors signed the Discussion Letter, Compass did not exercise its rights to immediately foreclose on the property and sue the Guarantors. The Discussion Letter stated: "Upon receipt of a fully executed copy of this letter, Compass is willing to discuss potential payment alternatives." It is undisputed that Compass not only discussed payment alternatives, but offered an alternative more favorable than the original note -- payment of approximately $365,000 of interest plus deferral of the maturity date from February

cannot do so for the first time on appeal. See Access Now v. Sw. Airlines Co., 385 F.3d 1324, 1330-31 (11th Cir.2004) (declining to consider issues, arguments or legal theories not raised initially before the district court).

17, 2010 to December 15, 2010. Thus, the Guarantors have failed to show that the contract was illusory, or to offer evidence that Compass tricked them into signing it.

Nor did the district court err in rejecting the merits of the Counterclaim. Because the language of the Discussion Letter provides that the Guarantors release Compass of "of and from any and all claims, counterclaims, suits, causes of action, damages, demands, costs, expenses, and compensation" arising from the Loan Documents, the Guarantors expressly waived their ability to counterclaim. See ITT Rayonier Inc. v. United States, 651 F.2d 343, 343 (5th Cir. 1981) ("Generally settlement of a dispute between parties renders moot any case between them growing out of that dispute."). Accordingly, the district court did not err in rejecting the Guarantors' counterclaim.

**AFFIRMED.**