Ronald D. TYM and Constance B. Tym, Plaintiffs-Appellants,

v.

Helen M. LUDWIG, f/k/a Helen M. Hood, and Hiller & Frank, S.C., Defendants-Respondents.

Court of Appeals

*No. 94–2859. Submitted on briefs June 29, 1995.—Decided August 9, 1995.*

(Also reported in 538 N.W.2d 600.)

377

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Ronald D. Tym,* pro se.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Stephen P. Juech*

and *Pamela M. Schmidt* of *Whyte Hirschboeck Dudek, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.   This is a slander of title action brought by homeowners Ronald D. and Constance B. Tym against the lawyers for the contractor who substantially built their home, Helen M. Ludwig and the Hiller & Frank law firm. The Tyms allege that by filing an unlawful lien against their home, the lawyers caused the Tyms to take the home off the market. By the time the lien was removed, the market was depressed and the Tyms had to sell their home for less. The trial court granted judgment to the lawyers as a matter of law, holding that damages for slander of title can only be proven by loss of a sale to a particular purchaser or purchasers. We reverse and hold that, depending on the facts found in a case, damages may also be proven by loss of a market that would otherwise have been available. We remand for the trial court to determine if this is such a case.

The Tyms entered into a building construction contract with Lemel Homes, Inc. for the construction of a home. The Tyms moved into the newly constructed home in April 1989, but notified Lemel that items remained to be completed under the construction contract and retained final payment. Subsequently, in August 1989, the parties entered into an agreement amending the construction contract. The amended contract provided that Lemel would complete the items and the Tyms would then pay Lemel $35,209 as full and final payment. At the request of Lemel's attorney, Harvey Jay Goldstein, a partner at Hiller & Frank, the Tyms made a partial payment of $20,000.

In November 1989, the Tyms, through their attorney, sent letters stating that Lemel had not worked on their home since August 31, 1989, and that the work remained incomplete under the parties' amended contract. Several months later, Goldstein forwarded a letter from Lemel requesting an opportunity to complete the work. The Tyms responded that since Lemel had not completed the items under their amended contract, they had completed the work themselves.

In May 1990, the Tyms put their home up for sale in anticipation of moving to New Mexico. Then, in July, Lemel sent a Notice of Intent to File Claim for Lien in the amount of $26,838.94 to the Tyms. Shortly thereafter, the Tyms withdrew their home from the market. In August, the Tyms sent a letter to Goldstein stating that Lemel had not performed work on their home for at least eleven months and, therefore, Lemel was not entitled, as a matter of law, to a lien. The letter also alleged that if the claim for lien was based on work performed on the air-conditioning system, this was warranty work which did not extend the statutory six-month time limit for filing the lien.

In September 1990, Ludwig, one of the lawyers at Hiller & Frank, filed a claim for lien against the Tyms' home in the amount of $26,838.94 at the direction of Goldstein. Eventually, as part of an arbitrated settlement, the Tyms obtained a release of the lien claim. Then, they filed this slander of title action against Ludwig and Hiller & Frank (collectively, the law firm), claiming that Ludwig had knowingly filed the claim for lien more than six months after furnishing labor and materials by Lemel, in violation of § 779.06, STATS., and for more than the total amount due—$15,209—upon complete performance under the amended contract.

The law firm filed a summary judgment motion on the grounds that (1) the Tyms had produced no evidence of the loss of a specific sale to a specific purchaser caused by the claim for lien and therefore there were no facts of record showing compensable damages in the slander of title action, and (2) they were protected against liability by a conditional privilege of qualified immunity. The trial court granted the motion based on the first ground, did not address the second ground, and dismissed all of the Tyms' claims, awarding costs to Ludwig.

We review the issue under summary judgment methodology. Summary judgment will be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Section 802.08(2), STATS. Whether a party is entitled to judgment as a matter of law is a question of law which we review de novo. *Smith v. State Farm Fire & Casualty Co.*, 192 Wis. 2d 322, 328-29, 531 N.W.2d 376, 379 (Ct. App. 1995).

Section 706.13(1), STATS., provides that:

> any person who submits for filing, docketing or recording, any lien, claim of lien . . . relating to the title in real . . . property, knowing the contents or any part of the contents to be false, sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any *actual* damages caused thereby. [Emphasis added.]

This section codified the common law slander of title cause of action, which as our supreme court stated in *Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 902, 419 N.W.2d 241, 244 (1988), required an individual to

show a publication which in pertinent part "plays a material or substantial part in inducing others not to deal with the plaintiff" and "results in *special damage*." (Emphasis added.) Thus, special damages or, as the statute calls it, actual damages, is one of the elements of a cause of action for slander of title. *See id.*

Here, the Tyms seek special damages based on the difference between the value of their home immediately before the filing of the claim for lien and the sale price of the home after the claim was released. Before the Tyms took their home off the market, it had been appraised at $435,000. The realtor who listed the house before the Tyms took it off the market gave deposition testimony that she could have sold the home above appraised value, for at least $445,000. The Tyms eventually sold their home in September 1991 for $415,000.

The Tyms allege that the notice of claim for lien forced them to take their home off the market and that while their home was off the market they were deprived of potential purchasers. Then, they argue, the intervening Gulf War and recession in the United States economy affected the real estate market and decreased the fair market value of their home. Thus, they contend that when they reentered the market, they were forced to sell their home at a price $20,000 to $30,000 less then what they could have prior to the decline in the market. Based on the foregoing, the Tyms contend that they have alleged sufficient facts of record to support compensable damages and to sustain their cause of action.

Conversely, the law firm argues that evidence of a general decrease in marketability is not sufficient and that the general rule is: to recover in a slander of title action a plaintiff must allege the loss of a specific sale

382

to a specific potential purchaser. *See, e.g., McNichols v. Conejos-K Corp.*, 482 P.2d 432, 435 (Colo. Ct. App. 1971); *Ellis v. Waldrop*, 656 S.W.2d 902, 904-05 (Tex. 1983); *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex. 1982); *Shell Oil Co. v. Howth*, 159 S.W.2d 483, 490 (Tex. 1942).

This particular issue has not been addressed in Wisconsin case law and is subject to much division of authority elsewhere. However, we determine that the appropriate answer to this issue is to follow the RESTATEMENT (SECOND) OF TORTS § 633 (1976). The Restatement provides in § 633(2)(a) that pecuniary loss may either be established by proof of the loss of a sale to a particular purchaser, *see also id.* at cmt. c, or, in § 633(2)(b), by the loss of sales to unknown persons whom it is impossible to identify, *see also id.* at cmt. g, h. Under subsec. (2)(b), where plaintiffs can show with reasonable certainty that wide publication of a slanderous statement deprived them of a market that would otherwise have been available, then the rule requiring the identification of specific purchasers is relaxed and recovery is permitted for the loss of the market. *See id.* at cmt. h.

*Teilhaber Mfg. Co. v. Unarco Materials Storage*, 791 P.2d 1164 (Colo. Ct. App. 1989), states the less narrow rule:

> Currently, the plaintiff is required to be particular only if it is reasonable to expect him to be so. If it is not a practical possibility to show specific losses, damages may then be proved by evidence similar to that used to prove lost profits resulting from a breach of contract. Consequently, if a plaintiff can present sufficient evidence, using detailed statistical and expert proof, to exclude the possibility that

other factors caused the loss of general business, recovery is allowed.

*Id.* at 1168 (citations omitted). The Colorado Court of Appeals stated that this rule is guided by the principle that the law requires "[a]s much certainty and particularity . . ., both in pleading and proof of damages, as is reasonable, having regard to the circumstances and to the nature of the acts themselves by which the damage is done." *Id.* (quoted source omitted).

■

We conclude that this more reasonable rule is consistent with Wisconsin case law defining special damages. Special damages are those occurring as a natural consequence of the wrongful conduct, but not so necessarily foreseeable as to be implied in law.[1] *See Univest Corp. v. General Split Corp.,* 148 Wis. 2d 29, 42, 435 N.W.2d 234, 239 (1989). Special damages may or may not be present as the result of the wrongful act—the proof depends on the factual circumstances of the case at hand. *State v. Boffer,* 158 Wis. 2d 655, 660, 462 N.W.2d 906, 908-09 (Ct. App. 1990). We hold that, when determining the necessary proof for special damages, the trial court must consider whether it is reasonable under the factual circumstances to expect the plaintiff to show that a slander of title prevented a particular sale. And, if such a requirement is not reasonable under the circumstances, the trial court must then determine the degree of particularity required. Therefore, we hold that the law firm was not entitled to judgment as a matter of law on the grounds relied upon

---

[1] In contrast, general damages are "necessarily implied from the wrong . . . [and] necessarily result from the injury regardless of its special character." *State v. Boffer,* 158 Wis. 2d 655, 660, 462 N.W.2d 906, 908 (Ct. App. 1990) (quoted source omitted).

by the trial court and reverse the dismissal of the Tyms' cause of action on this basis.

Having determined the proper application of the law, we hold that it is not for this court to decide whether the facts of this case require the Tyms to prove a loss of a specific sale or whether the less narrow view should be used. We are satisfied that there are disputed issues of material fact which must be resolved by the trier of fact before the determination can be made. We note that if there are disputed issues of material fact, they should be decided by the fact finder at trial, not by the appellate court. *See Landreman v. Martin,* 191 Wis. 2d 788, 801, 530 N.W.2d 62, 67 (Ct. App. 1995).

Here, the Tyms allege that if they had left their home on the market, they would have had to disclose the cloud on their title to prospective purchasers. They contend that it was not reasonable under the circumstances to require them to:

> wait for an unsuspecting prospective purchaser to submit an offer to purchase based on the assumption that the [Tyms] had good and marketable title, and then, after the offer to purchase was submitted, spring on the hapless prospective buyers the news that there was a cloud on the title and wait for the buyers to inevitably withdraw their offer or offer a lower purchase price . . .

The Tyms argue that the law does not require "such an exercise in futility."

However, the law firm contends that the claim for lien had no bearing on the eventual sale price of the Tyms' home. The firm argues that the Tyms removed their home from the market, not because of the lien claim, but to facilitate their move to New Mexico. It

also argues that there is no evidence that the Tyms would have received any offers during the time the Tyms had their home off the market during the fall and winter months, considering that during this time of the year, "house sales are typically slow."

We conclude that the parties' arguments present material issues of fact relating to whether it was reasonable to expect the Tyms to show the loss of a specific sale. The Tyms must prove to the fact finder that they withdrew their home from the market because of the lien claim and that other unrelated factors were not the reasons for the lower sale price of their home. The Tyms must present sufficient evidence that it was not a "practical possibility to show specific losses," *see Teilhaber,* 791 P.2d at 1168, and that withdrawing their home from the market was necessary and reasonable under the circumstances.

Both parties have briefed and argued a second issue, not decided by the trial court, concerning whether the law firm was privileged against liability for the validity of the lien claim. The defendant in a slander of title action under § 706.13, STATS., is protected against liability for the truth of statements made in a lien claim by the conditional privilege stated in *Kensington Dev.,* 142 Wis. 2d at 903, 419 N.W.2d at 244. The protection is subject to two conditions: "(1) the pleader must have a reasonable ground for believing the truth of the pleading, and (2) the statements made in the pleading must be reasonably calculated to accomplish the privileged purpose." *Id.* at 904, 419 N.W.2d at 245. The issue the parties dispute relates to the first condition—whether there was a reasonable ground for Lemel's attorneys to believe the truth of the claim for lien.

To be valid, a construction lien must be filed within six months of the last day labor or materials are furnished by the lien claimant. Section 779.06(1), STATS. Warranty or repair work on an original installation does not extend the time for filing a construction lien. *See Brown & Haywood Co. v. Trane,* 98 Wis. 1, 4, 73 N.W. 561, 562 (1897). Thus, the time for filing the lien claim is measured from the date of the original installation, not from the date of the later repair work.

The law firm contends that before Ludwig filed the claim for lien, Goldstein contacted Lemel twice to verify the information contained in the claim and was told that work was performed on the Tyms' home on May 15, 1990, four months before filing the claim, and that such work was not warranty work. However, the Tyms argue that Goldstein's factual investigation and reliance on his client's statements were inadequate in light of their letters to him that Lemel had not performed any work since August 1989.

Under § 802.05(1)(a), STATS., the person signing the pleading warrants that on knowledge and "belief, formed after reasonable inquiry," the pleading is "well-grounded in fact." How much is reasonable depends on the circumstances and is a determination within the trial court's discretion. *Riley v Isaacson,* 156 Wis. 2d 249, 256, 259, 456 N.W.2d 619, 622, 623 (Ct. App. 1990). Under a proper exercise of discretion, the trial court must examine the relevant facts. *Id.* at 256, 456 N.W.2d at 622.

The Tyms contend that the trial court's dismissal of their action deprived them of the opportunity to

develop the facts pertaining to this issue.[2] We agree and hold that whether Goldstein conducted a reasonable inquiry and whether he had a reasonable basis for believing the lien claim turns on facts not yet fully developed, and, as a matter of trial court fact-finding and discretion, is a determination to be made by the trial court, not the court of appeals. We remand to the trial court so that the fact finder can determine what Goldstein knew about the dates work was performed and whether that work was a repair of an original installation. Then upon the development of the relevant facts, the trial court can make its discretionary determination about whether Goldstein reasonably relied on his client's statements.

As a practical matter, the trial court may want to determine the qualified immunity issue first. If the trial court decides that Goldstein did not have a reasonable basis for believing the validity of the lien claim, then the fact finder can hear the facts pertinent to the damages issue discussed at the outset of this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[2] Goldstein had refused to comply with discovery requests on matters relating to the content of conversations between Lemel and its attorneys about the last day of furnishing labor and materials to the Tyms' home and about the amount due under the amended construction contract, citing attorney-client privilege. Prior to the dismissal of their case, the Tyms filed a motion to compel discovery; the trial court granted the Tyms' motion.