TERENCE T. EVANS, Circuit Judge.
 

 Maureen Dougherty was the plaintiff in an adversary action filed in Tad Bero’s bankruptcy proceeding. She claimed that a debt due her from Bero was not dischargeable because it was procured by fraud. In the bankruptcy court the parties stipulated that liability could be determined on summary judgment and that, if necessary, a trial would be held regarding damages. The bankruptcy court granted summary judgment for Dough-erty and, after a trial, set damages at $112,-390.52. The district court affirmed the judgment. Bero appeals.
 

 Throughout the 1980’s Bero owned two corporations, Kitchens by Bero, Inc. and Tad Bero Kitchen and Bath, Inc. Through these corporations he operated a business in East Dundee, Illinois, under the trade name Kitchens by Bero, Inc.
 

 Dougherty responded to an ad Bero placed in a trade paper offering his business for sale. She began negotiations with him in September 1991, and on January 14, 1992, the parties signed two contracts by which Dougherty purchased the assets of the corporations. She paid $50,000 in cash, assumed a $50,000 liability at Bero’s bank, and signed two promissory notes, one to each corporation in the amounts of $70,000 and $30,000.
 

 Except for the precise sum and terms of payment, the contracts for the purchase of the two corporations were identical. Both contracts contain warranties that the sellers had valuable goodwill, had paid their tax liabilities, and were free of debts, encumbrances, liens and judgments:
 

 
 *464
 
 [T]here are no judgments of record in the State of Illinois or any other state, or proceedings pending or threatened against the SELLER in any court that might affect this Agreement or the property herein provided to be sold; and there are no judgments [of] record or proceedings pending or threatened in Federal Court.
 

 As Dougherty to her chagrin was to learn, these representations were not true. There were several outstanding debts owed by the debtor and also several outstanding judgments against Kitchens by Bero. The debts included unpaid Illinois state sales tax, six judgments in circuit courts for Cook and Kane Counties, debts to suppliers, and an IRS levy.
 

 Nevertheless, Dougherty tried to keep the business going until September 1993, when she was forced to close up shop. She was unable to repay the $50,000 bank loan and the bank sued her. The case was settled when she paid $6,250, and she incurred $12,-377.80 in attorney fees defending the suit.
 

 Then Bero sued Dougherty in state court to enforce the promissory notes running in favor of the corporations. Dougherty removed the case to federal court where it was assigned to Judge Milton I. Shadur. She counterclaimed for fraud in the inducement and moved for summary judgment. Bero later filed for personal bankruptcy and was no longer involved in the case.
 

 During proceedings in the district court, the corporations failed to file a counter-statement to Dougherty’s statement of uncontested facts and also failed to answer a request for admissions pursuant to Rule 36 of the Federal Rules of Civil Procedure. Judge Shadur found that “the representations and warranties were egregiously false ...” and that Dougherty “had been swindled.” He granted the relief requested: rescission of the promissory notes.
 

 Dougherty filed her adversary complaint in the bankruptcy case (the ease before us) on March 21, 1994. She alleged that damages due her from Bero, growing out of the sale of the corporations, were not dischargeable in bankruptcy because they were obtained by fraud. 11 U.S.C. § 523(a)(2)(A). In connection with the summary judgment in the bankruptcy court, Bero filed a statement of contested facts but did not support his denials with affidavits except his own, which was conclusory and said basically that he didn’t do anything wrong. The courts below agreed with Dougherty that the debts were not dischargeable.
 

 Before us Bero launches his attack on the liability findings from three fronts. He claims (1) that the courts below improperly applied the principle of collateral estoppel to Judge Shadur’s opinion; (2) that there was no fraud because a bulk sales affidavit provided to Dougherty at closing shows that Bero revealed his debts and those of the corporations; and (3) that, in any case, in order to support a finding of misrepresentation, statements regarding the financial condition of the business must be in writing and his weren’t.
 
 [1]
 

 Listing Bero’s arguments hardly conveys the enormous weaknesses in them and the problems with the record in this case, some of which counsel at oral argument freely admitted. Counsel also mentioned, rather defensively and more than once, that he was a recent entrant into the litigation. What we have here is a situation in which the argument regarding the necessity for a writing was not raised in the bankruptcy court; the bulk sales affidavit was not presented to either court below, and, as counsel acknowledged, there is no evidence in the record that Dougherty ever saw it prior to the closing. These arguments, it is fair to say, were wisely not vigorously pressed before us. Unfortunately for Bero, the argument regarding collateral estoppel on which counsel most heavily relies is, if anything, even more flawed. There is no hint that either the bankruptcy court or the district court relied on the principle of collateral estoppel. Dougherty asked them to, but they simply did not do it.
 

 
 *465
 
 In the adversary action, Dougherty claimed Bero engaged in misrepresentation under 11 U.S.C. § 523(a)(2)(A) and that therefore his debt to her was not dischargea-ble in his bankruptcy proceeding. Section 523(a)(2) provides: A discharge under [several sections] does not discharge an individual debtor from any debt—
 

 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
 

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition;
 

 (B) use of a statement in writing—
 

 (i) that is materially false;
 

 (ii) respecting the debtor’s or an insider’s financial condition;
 

 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 

 (iv) that the debtor caused to be made or published with intent to deceive^]
 

 In order to prove that a debt is non-dischargeable, the creditor bears the burden of proof by a preponderance of the evidence.
 
 Grogan v. Garner,
 
 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Recently the Supreme Court has determined that under § 523(a)(2)(A) the creditor must show that she acted in “justifiable reliance” on the representations.
 
 Field v. Mans,
 
 — U.S. -, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Now we turn — ever so briefly — to Bero’s arguments.
 

 First, the bulk sales affidavit. It is uncontested that this document and a short excerpt from Ms. Dougherty’s deposition (taken out of context, says the appellee) were never a part of the record in the courts below. Dougherty has filed a motion to strike reference to both from Bero’s brief, and our motions panel has referred the issue to us. We have been given no explanation for why these materials were not presented to the courts below nor how it happened that they turned up in time for this appeal.
 

 We have been told — and we must agree— that were the bulk sales agreement in the record, it would be the best evidence Bero could use to support his claims that he did not engage in misrepresentation. However, it is far from a smoking gun. It would not be conclusive in establishing that his statements were not fraudulent. At best, it might be said to raise an issue of fact precluding summary judgment. We also note that in an evaluation of the bulk sales affidavit, a court would need to compare the debts set out in the document with those which actually existed. For instance, our cursory examination shows that the bulk sales affidavit reveals that Kitchens by Bero owed Reynolds Enterprises, Inc. $100. However, in the record is a judgment for Reynolds Enterprises from the circuit court of Cook County in the amount of $1,499.95. The affidavit does not mention a judgment in the
 
 same
 
 court in favor of Gaggenau U.S.A. against Kitchens by Bero in the amount of $3,741.25.
 

 The bulk sales affidavit would also need to be measured against the statements made by Bero at his deposition, admitting that he withheld information from Dougherty prior to the closing. He said,
 

 I did not tell her I owed the IRS $50,000. Actually, it was 84,000, something like that. I did not — I only withheld two or three things like that that I didn’t want to show anybody because if [the sale] didn’t happen I didn’t want them spreading things about me that were negative.
 

 Or, in response to a question regarding whether he ever told Dougherty that some of his suppliers insisted on cash before they would make delivery, Bero said, “Probably not.” The affidavit does not explain away the good possibility that although Bero told Dougherty that the profit margin at the business was 33 percent, it actually was closer to 6 percent. The bulk sales affidavit does not erase the statements in the contracts that:
 

 SELLER warrants that there are no judgments ... filed against the business or SELLER.
 

 In fact there were several. And the bulk sales affidavit does not reveal them.
 

 
 *466
 
 Having considered the issue, we grant the motion to strike the bulk sales affidavit from the record. By holding Bero to reasonable litigation procedures, however, we are not grasping certain victory from his hands. Far from it.
 

 This issue, we think, highlights the wisdom of requiring that our review be based on the record as it existed below. Bero is saying now that he has a document which raises an issue of fact. If we were to accept the document and agree that it did raise an issue of fact, we, of course, cannot then resolve the issue ourselves. The case would have to be sent back to wind its way again through the bankruptcy court and the district court and eventually back to us. All of this because a document purportedly signed by the debtor on January 16, 1992, was not available to be presented to the bankruptcy court by the debtor prior to its decision on December 14, 1995, but was available to be a basis for argument in a brief filed with us on October 15, 1996. It was wise of counsel to quietly shelve this issue at oral argument.
 

 Bero’s next contention is similarly flawed. This time, rather than a piece of evidence, it is a legal argument which was not presented to the bankruptcy court. Bero says that under 11 U.S.C. § 523(a)(2)(A) and (B), to be actionable, misrepresentations going to the financial condition or profitability of a business must be in writing. The argument was raised for the first time on appeal to the district court, which found that it has been waived because it was not presented to the bankruptcy court. The argument was barely mentioned at oral argument except to concede that it had not been raised in the bankruptcy court.
 

 We agree with the sentiments expressed in
 
 Matter of Weber,
 
 25 F.3d 413 (7th Cir.1994), that it would not be good practice for us to encourage the bypassing of the bankruptcy court by allowing litigants to save their best arguments for appeal. Of course, here, unlike the situation in
 
 Weber,
 
 Bero’s is not what could be considered a “best argument”; it is not even a very good one. Assuming that subsection (B) applies to more than formal financial statements, which we do not assume
 
 (see Matter of Mayer,
 
 51 F.3d 670, 675 (7th Cir.1995), cert. denied, — U.S. -, 116 S.Ct. 563, 133 L.Ed.2d 488),
 
 [2]
 
 there were plenty of written statements in this record which could have been found to be misleading. Bero has not lost anything by waiving this issue.
 

 Bero places his last hope for reversal on the issue of the alleged application of the principle of collateral estoppel to Judge Sha-dur’s decision. We need do no more than glance at this argument.
 

 The uncontrovertible fact is that neither the bankruptcy court nor the district court relied on Judge Shadur’s decision. Both courts, in reciting the historical facts, acknowledged that there had been a case before Judge Shadur, and they stated what the outcome was. But neither even hints that because he decided an issue they were bound by his finding. Bero’s argument on this point is specious.
 

 Not surprisingly, Dougherty asks us to impose sanctions on Bero, pursuant to Rule 38 of the Federal Rules of Appellate Procedure, for bringing a frivolous appeal. The rule says:
 

 ■ If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.
 

 Before sanctions can be ordered the rule requires either a separate motion for sanctions or a notice from us that sanctions are in the winds. Although it may be a bit of a waste of time in this case to require strict adherence to procedure as Bero has received actual notice of the request through Dough-erty’s brief and replied to it in his own, we will do so. Bero is advised that we suspect this was a frivolous appeal by a defrauder and that a sanction probably should be ordered. Also, so Bero knows what we are contemplating, we think a sanction in the area of $1,000 plus double costs may be
 
 *467
 
 appropriate. Bero will have 14 days to tell us why sanctions should not be ordered or why the sum we note is too high.
 

 The judgment of the district court is
 

 Affirmed.
 

 [1]
 

 . In his brief, Bero also argued that the damages were improper. At oral argument, however, he abandoned that claim,
 

 [2]
 

 .
 
 In Matter of Mayer,
 
 in a discussion of another matter, we indicated that subsection (B) applied to "a fib in a financial statement — the category carved out of § 523(a)(2)(A).”