200 F.3d 522 (7th Cir. 1999)
 Gerald T. Niedert, Plaintiff-Appellant,
v.
Richard J. Rieger, Defendant-Appellee.
 No. 98-4006
 In the United States Court of Appeals For the Seventh Circuit
 Argued October 14, 1999
Decided December 29, 1999
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 98 C 317--J.P. Stadtmueller, Chief Judge.
 Before Harlington Wood, Jr., Cudahy, and Kanne, Circuit Judges.
 Cudahy, Circuit Judge.
 
 
 1
 In 1996, Richard Rieger filed for relief under Chapter 7 of the Bankruptcy Code. Gerald Niedert brought an adversary proceeding against Rieger under 11 U.S.C. sec. 523(a)(6), seeking determinations of liability and nondischargeability. After a four- day trial, the bankruptcy court determined, sua sponte, that Niedert was not entitled to damages from the defendant as a matter of Wisconsin law. The district court affirmed, and this appeal followed.
 
 
 2
 We affirm.
 
 I. Facts and Disposition Below
 
 3
 In 1988, Richard Rieger purchased nine lots in the fourteen-lot Loramoor Subdivision in Lake Geneva, Wisconsin. Gerald Niedert had purchased Lot 8 in the same subdivision, which had frontage on the lake, a few years earlier. Also in 1988, Niedert began planning the construction of a home on his land. At that time, his lot was subject to a restrictive covenant limiting construction to a single-story home.[1] During the annual meeting of the Loramoor Property Owners Board of Directors, on which Rieger sat, Niedert requested that the restriction be removed. The Loramoor Property Owners Association's Architectural Committee, of which Rieger was one member out of three, met to discuss whether they should lift the restriction on Niedert's lot. After their meeting on September 10, 1988, Jerry Polek (the Board President and member of the Architectural Committee) circulated a letter to all property owners asking whether they objected to Niedert's request. When no response was received objecting to the change, Niedert's request was granted. The Declaration of Restrictions was amended to allow Niedert to build a two-story home.[2] Before beginning construction in 1993, Niedert submitted plans for his two-story home to the Architectural Committee for approval. Polek delivered the blueprints to Rieger, but apparently Rieger never approved them. Regardless, the other two members of the Committee approved the plans, and Niedert was ready to build.
 
 
 4
 In July of 1993, Niedert began construction of a two-story home on his land, and shortly after the basement was poured, he was sued. The Loebers, who had purchased Lot 3 from Rieger in the fall of 1989, were concerned that Niedert's two-story home would obstruct their view of the lake. Rieger had told the Loebers, when he sold them the lot, that any home built between Lot 3 and the lake would be no higher than a single story. The Loebers sued Niedert in state court, requesting a temporary injunction preventing further construction of the home. Rieger submitted an affidavit in which he stated:
 
 
 5
 [A]s far as I knew, Niedert could not build a two-story residence and . . . I was completely in the dark as to why Niedert believed otherwise. . . . I had absolutely no knowledge of any Amendment to the Declaration of Restrictions nor had I ever been asked for my consent to such Amendment.
 
 
 6
 Affidavit of Richard Rieger, para.para. 8, 9. On the strength of this affidavit, the state court granted the temporary injunction.
 
 
 7
 Niedert eventually settled with the Loebers, but as part of the settlement, Niedert dramatically altered the plans for his home, retaining a two- story design but reducing the roof elevation to about 31 feet. The alterations resulted in additional costs to Niedert of more than $120,000. Construction resumed after the settlement and continued until other neighbors, the Gellers, sued Niedert in September of 1994. The Gellers, represented by the Loebers' old attorney and armed with an affidavit from Rieger, requested a temporary injunction for the same reason as the Loebers. Rieger's affidavit was virtually identical to the one he supplied in the Loeber action. This time, however, the court denied the temporary injunction, found the Gellers' claim frivolous and awarded Niedert almost $19,000 in costs and attorney's fees.
 
 
 8
 During the next couple of years, Rieger and his wife must have fallen on hard times: they filed for bankruptcy in 1996. After Rieger filed for Chapter 7 relief, Niedert brought an adversary proceeding before the bankruptcy court on the ground that Rieger's conduct in producing the false affidavits was willful and malicious under 11 U.S.C. sec. 523(a)(6), making any resulting damages nondischargeable. The bankruptcy court determined that Rieger's conduct was willful and malicious and found that Niedert had suffered more than $120,000 in damages as a direct result of the affidavit Rieger provided for the Loeber action. In the end, however, the court dismissed Niedert's claim because it found, sua sponte, that Niedert's injury was not compensable under Wisconsin law. Citing several Wisconsin cases, the bankruptcy court explained that "there is an overriding policy under state law which provides that a witness' statements, which include testimony, affidavits and depositions, made in connection with litigation are entitled to absolute immunity from civil liability, as long as the statements bear proper relationship to the issues being litigated." Niedert v. Rieger (In re Rieger), Ch. 7 Case No. 96-22013-MDM, Adv. No. 96-2440, mem. op. at 17 (Bankr. E.D. Wis. Feb. 23, 1998). The bankruptcy court found that, although they were false, Rieger's statements in his affidavit were relevant to the Loeber action. Thus, the bankruptcy court held that the Wisconsin absolute immunity rule defeated Niedert's claim for damages. Niedert's claim was dismissed.
 
 
 9
 Niedert appealed to the district court, arguing that Rieger had waived the affirmative defense of absolute privilege by never once mentioning it in the bankruptcy court. Niedert also challenged the sua sponte dismissal and argued that Rieger was not entitled to the privilege as a substantive matter. The district court rejected all of Niedert's arguments, and it affirmed the judgment of the bankruptcy court. Niedert appeals again.
 
 II. Discussion
 
 10
 The thrust of Niedert's appeal before this court is that the absolute immunity rule stated by the bankruptcy court does not apply in this case. Niedert offers several arguments in support of his position. He argues that the absolute immunity rule (also referred to as the absolute privilege rule) does not apply because: (1) the cases establishing the absolute immunity rule are distinguishable from this case; (2) Rieger was guilty of a continuum of fraudulent behavior both in and out of court; and (3) Niedert is claiming "slander of title," which is an exception to the absolute immunity rule. None of the essential facts of this case are in dispute: all the issues before us and all the arguments made by Niedert are legal ones. We review conclusions of law made by a bankruptcy court and affirmed by a district court de novo. In re Krueger, 192 F.3d 733, 737 (7th Cir. 1999); In re Scott, 172 F.3d 959, 966 (7th Cir. 1999).
 
 A. Absolute Immunity
 
 11
 Under Wisconsin law, "[w]itnesses are immune from civil liability for damages caused by false and malicious testimony, if relevant to the issues in the matter where the testimony is given." Bromund v. Holt, 129 N.W.2d 149, 152 (Wis. 1964) (citing cases), quoted in Bergman v. Hupy, 221 N.W.2d 898, 900 (Wis. 1974). This immunity extends to statements made in pleadings, in affidavits or in open court--again, so long as the statements are relevant to the litigation. Kensington Dev. Corp. v. Israel, 419 N.W.2d 241, 243 (Wis. 1988) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts, sec. 114, at 817 (5th ed. 1984)). The determination whether statements are relevant to the litigation is a question of law, and "all doubts should be resolved in favor of relevancy." Snow v. Koeppl, 464 N.W.2d 215, 216 (Wis. Ct. App. 1990) (citing Bussewitz v. Wisconsin Teachers' Ass'n, 205 N.W. 808, 810 (Wis. 1925)). The Loeber action sought to enjoin Niedert's construction of a two-story home, and Rieger's affidavit, although false and malicious, concerned Niedert's right to build a two-story home. Because there is no doubt that it was relevant to the litigation in which it was filed, Rieger is absolutely immune from liability for damages caused by his false and malicious testimony.
 
 
 12
 Niedert argues that Rieger is not entitled to absolute immunity because this case is unlike those in which Wisconsin courts found the absolute privilege applicable. In short, he distinguishes the facts of the Wisconsin cases on which the bankruptcy court relied. First, he argues, this is not a slander case dealing with statements made to a district attorney, to which the Bergman court applied absolute immunity. See 221 N.W.2d at 899. Second, Niedert points out that Rieger was found to be malicious in his misstatements, but the defendant in Bromund was found only to be negligent. See 129 N.W.2d at 154. Third, Rieger was not a court-appointed expert, as was the Snow defendant. See 464 N.W.2d at 215. Although Niedert's observations about these cases are all correct, he points only to immaterial distinctions. The essential point is that the Bergman, Bromund and Koeppl courts all apply the same broad absolute immunity rule to the facts of the cases before them. None purport to narrow the application of the rule based on factual distinctions like those cited by Niedert. His argument on this score, therefore, fails.
 
 
 13
 Niedert makes a better, but still not winning, argument under Anderson v. McBurney, 467 N.W.2d 158 (Wis. Ct. App. 1991), in which the court denied immunity to an attorney who intentionally misled a probate judge in order to deprive Anderson of her rightful inheritance. The Anderson opinion might lend some support to Niedert's argument that Rieger, like the attorneys in Anderson, is not immune because he made intentional misrepresentations: in Anderson, the court denied immunity because "defendants cite no case in which the rule, whether stated in terms of immunity or privilege, has been recognized in an action against a person . . . for misrepresentations made to a court for the purpose described in Anderson's complaint." 467 N.W.2d at 162. But the exception recognized in Anderson is very specific, and Niedert's reading neglects to take into account that the Anderson court limited its holding to a misrepresentation "made to a court for the purpose described in Anderson's complaint," namely tortious deprivation of an inheritance "described in sec. 774B of the Restatement." 467 N.W.2d at 162 (emphasis added). Further, even if Anderson is taken for the proposition that absolute immunity should be applied narrowly, other Wisconsin Court of Appeals cases suggest otherwise. See, e.g., Snow, 464 N.W.2d at 217 ("[W]e see no reason to diminish the immunity or alter the rule under the present circumstances.") Reading the absolute immunity rule broadly, as the Snow court did, follows the language of the Wisconsin Supreme Court opinions more closely, see, e.g., Bromund, 129 N.W.2d at 152 (stating unqualified rule as "[w]itnesses are immune from civil liability for damages caused by false and malicious testimony . . . ."), and we follow that course. Niedert's argument on this point must be rejected as an unwarranted effort to narrow the absolute privilege, and absolute immunity still applies to Rieger's affidavit.
 
 B. Continuum of Fraudulent Behavior
 
 14
 Niedert also argues that the bankruptcy and district courts erroneously restricted their analyses to Rieger's affidavit in the Loeber action. Niedert claims that he alleged a continuum of fraudulent conduct by Rieger both in an out of court that ultimately damaged Niedert. It is true that Niedert alleged that Rieger--in addition to filing the false affidavit in the Loeber action--lied to him, lied to the Loebers, lied to the Gellers and lied to his own bank. But the only action taken by Rieger that actually harmed[3] Niedert was the false and malicious affidavit in the Loeber action. Allegations that Rieger is a habitual liar do little to challenge the fact that the damage-causing affidavit was filed during litigation, and the related allegations do not affect the application of the absolute privilege.
 
 C. Slander of Title
 
 15
 Niedert also argues that Rieger is not absolutely immune because Rieger committed slander of title. Under Wisconsin law, the absolute immunity rule does not provide a defense against the tort of slander of title committed, for example, by filing a false lis pendens notice. See Kensington, 419 N.W.2d at 244. Instead, a conditional privilege applies, which requires (1) that the pleader have a reasonable ground for believing in the truth of the assertion and (2) that the statements be reasonably calculated to accomplish a privileged purpose. Id. at 245. Niedert argues that a conditional privilege, like that applied in Kensington, should be applied in this case, too. There are several problems with this argument: first, Niedert raised his slander of title argument neither in the bankruptcy court nor in the district court.[4]
 
 
 16
 Niedert admits that he failed to argue slander of title as an exception to the absolute immunity rule before the bankruptcy court. However, he provides a plausible explanation for this failure: Rieger did not argue absolute immunity. Instead, the bankruptcy court, sua sponte and without giving the parties leave to file additional post-trial briefs, dismissed Niedert's bankruptcy claim as noncompensable under state law because of the absolute immunity rule. Thus, because absolute immunity came out of the blue, we are not surprised that Niedert did not argue an exception to that rule. But the exception was not argued before the district court either.
 
 
 17
 Although the general rule is that we do not decide issues raised for the first time on appeal, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." Singleton v. Wulff, 428 U.S. 106, 121 (1976). The general rule prevents litigants from being "surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence," Hormel v. Helvering, 312 U.S. 552, 556 (1941), and although we have acknowledged that "it would not be good practice for us to encourage the bypassing of the bankruptcy court [or the district court] by allowing litigants to save their best arguments for appeal," In re Bero, 110 F.3d 462, 466 (7th Cir. 1997), addressing Niedert's slander of title contention is appropriate in this case. Both parties briefed the slander of title issue and addressed it at oral argument, so neither will be surprised by our considering it. Niedert's slander of title argument "rests entirely on a pure issue of [law], as to which the district judge's view, while it would no doubt be interesting, could have no effect on our review, which is plenary on matters of law," Amcast Indus. Corp. v. Detrex Corp., 2 F.3d 746, 749-50 (7th Cir. 1993), and we "need not engage in any improper fact-finding" because all the relevant facts were presented below. Diersen v. Chicago Car Exch., 110 F.3d 481, 485 (7th Cir. 1997). Under these circumstances and because there is no problem for either the parties or the district court, we will resolve the slander of title issue.
 
 
 18
 Slander of title exists under Wisconsin law in both common law and statutory form, and its elements are largely the same under either: "A knowingly false, sham, or frivolous claim of lien or any other instrument relating to real or personal property filed, documented or recorded which impairs title is actionable in damages." Kensington, 419 N.W.2d at 244. See Wis. Stat. Ann. sec. 706.13(1) (1999). In arguing that Rieger's affidavit forms the basis for a slander of title claim, Niedert overstates the breadth of that tort. Slander of title applies to actions which impair or affect title. See Kensington, 419 N.W.2d at 244; Wis. Stat. Ann. sec. 706.13(1). Title generally relates to the formal right of ownership and the right to possess property. Rieger's affidavit did not challenge or threaten Niedert's ownership of or right to possess his lot: Rieger's affidavit challenged Niedert's proposed use of the land, i.e. building a two- story home on it. Niedert does not cite nor could we find a single Wisconsin case where a document challenging the use, rather than the ownership, of real property gave rise to a slander of title claim. See Schlytter v. Lesperance, 215 N.W.2d 552, 553 (Wis. 1974) (finding malicious recording of false affidavit asserting interest to the property under a written contract to repurchase was slander of title); Kensington, 419 N.W.2d at 242 (finding frivolous lis pendens notice of suit to revest title to property was slander of title); Larson v. Zilz, 445 N.W.2d 699, 701 (Wis. Ct. App. 1989) (finding lis pendens notice recorded against property of nonparty to divorce proceeding was slander of title); Tym v. Ludwig, 538 N.W.2d 600, 602 (Wis. Ct. App. 1995) (finding that claim of lien filed without reasonable inquiry can fit slander of title theory). Because Rieger's affidavit did not threaten Niedert's ownership or right to possess, Niedert has failed to state a claim for slander of title. Holding to the contrary would represent an unprecedented expansion of the slander of title cause of action as recognized by Wisconsin.[5] Rieger is therefore still entitled to absolute immunity.[6]
 
 III. Conclusion
 
 19
 At the end of the day, Niedert has presented no argument that denies Rieger access to absolute immunity. The absolute immunity rule may be "counterintuitive," as suggested by the bankruptcy court, but it has strong policy foundations. Cases like this one are an acceptable price to pay in order to avoid a chilling effect on witnesses. See Bussewitz, 205 N.W. at 811. If witnesses' statements can be the grounds for subsequent lawsuits, even honest witnesses will be less likely to speak because of the possibility of a finding of malice. The chilling of honest testimony would be unacceptable.
 
 
 20
 For all these reasons, the judgment of the district court is
 
 
 21
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Restriction B.2 of the Declaration of Restrictions of Loramoor Subdivision, a document properly recorded in the Walworth County Register of Deeds, stated: "Buildings constructed on Lots 7 and 8 shall be restricted to a one-story residence." See Niedert v. Rieger (In re Rieger), Ch. 7 Case No. 96-22013-MDM, Adv. No. 96-2440, mem. op. at 2 n.1 (Bankr. E.D. Wis. Feb. 23, 1998) (citing trial record).
 
 
 [2]
 On May 17, 1989, the amendment was recorded (in the Walworth County Register of Deeds) and stated: "Section B.2 of the Declaration of Restrictions for Loramoor Subdivision is hereby amended as follows: 2. Any building constructed on Lot 7 shall be restricted to a one-story residence." See Niedert v. Rieger, Adv. No. 96- 2440, mem. op. at 4 (citing trial record).
 
 
 [3]
 One could argue that the lies Rieger told the Loebers and the Gellers that induced them to sue Niedert caused Niedert harm. As for the Gellers, Niedert recovered fees and costs from their frivolous suit; therefore, he has already been compensated for any harm done by Rieger's lies to and affidavit provided for the Gellers. And, as for the Loebers, if it weren't for Rieger's maliciously false affidavit, the injunction would surely have been denied; therefore, the lies that caused them to sue produced no harm in and of themselves.
 
 
 [4]
 We find his failure to raise the argument before the district court especially dismaying given that the bankruptcy court mentioned slander of title as an exception to the rule under which it dismissed Niedert's claim. The bankruptcy court had stated:
 There are exceptions to the absolute immunity rule for slander of title, Kensington Dev. Corp. v. Israel, 142 Wis.2d 894, 903, 419 N.W.2d 241, 245 (1988), and statements made to law enforcement officers, Bergman v. Hupy, 64 Wis.2d 747, 751-52, 221 N.W.2d 898, 901 (1974), which provide a conditional privilege, and civil liability may attach for false and malicious testimony. Nevertheless, conditional privilege is not applicable to the facts of this case.
 Niedert v. Rieger, Adv. No. 96-2440, mem. op. at 17.
 
 
 [5]
 We also have some reservations about whether a document filed with a court but not recorded in the appropriate county's register of deeds can be the basis for a slander of title action. We found no Wisconsin case where an unrecorded document supported the action. See Schlytter, 215 N.W.2d at 553 (recorded affidavit); Kensington, 419 N.W.2d at 242 (lis pendens notice); Larson, 445 N.W.2d at 701 (lis pendens notice); Tym, 538 N.W.2d at 602 (claim of lien). However, we will not decide this issue because other adequate grounds are available.
 
 
 [6]
 Because Niedert's slander of title claim fails, there in no need to discuss the conditional immunity that would apply to Rieger's action if Niedert had a legitimate slander of title claim.
 
 
 
 22
 Harlington Wood, Jr., Circuit Judge, concurring.
 
 
 23
 I join in the opinion, but I regret not being able to get around or through Wisconsin law to alleviate the harm done to Niedert in this bold and blatant fraud.