PITTMAN, Judge.
Massey Asphalt Paving, Inc. (“Massey”), appeals from a judgment of the St. Clair Circuit Court, which determined that Massey did not hold a valid materialman’s lien on property owned by Lee Land Development, Inc. (“Lee Land”). We affirm.

Procedural History

Massey sued Lee Land, alleging that Massey and Lee Land had entered into an agreement pursuant to which Massey was to provide paving materials and to perform paving work in connection with the improvement of two tracts of Lee Land’s real property in St. Clair County known as Lee Gardens and Lee Commercial Park (sometimes hereinafter referred to collectively as “the properties”). Massey alleged further that, although it had provided the materials and had performed the work on the properties as agreed upon, Lee Land had not paid Massey the amount it had agreed to pay. Massey stated causes of action alleging breach of contract, work and labor done, open account, and promissory fraud, and Massey sought to enforce a materialman’s lien on the properties. Along with its complaint, Massey submitted a statement of lien that had been filed in the St. Clair Probate Court on November 12, 2008.
After a nonjury trial, the trial court entered a judgment finding that Lee Land owed Massey for work and materials provided, and it entered a judgment in Massey’s favor in the amount of $35,000. The trial court, however, also found that Massey did not hold a lien on the properties because, the trial court determined, Massey had not timely filed its statement of lien in the probate court pursuant to § 35-11-215, Ala.Code 1975. That Code provision requires Massey to have filed a statement of lien within six months of performing the last item of work, or providing the last item of material, for the paving job. We also note that § 35-11-221, Ala.Code 1975, requires an action to enforce a mate-rialman’s lien to be commenced “within six months after the maturity of the entire indebtedness secured thereby,” although the trial court did not expressly rely on that Code provision in finding that Massey could not enforce a materialman’s lien. Massey appealed from the judgment, arguing that the trial court erred in determining that Massey did not hold a material-man’s lien on the properties.[1]

Standard of Review

“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on dis *1273 puted facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007). Our supreme court has indicated that factual issues surrounding the timeliness of the filing of a statement of a materialman’s lien, as well as the timeliness of an action to enforce such a lien, are subject to the ore tenus rule. C & S Family Credit of Alabama, Inc. v. McNairy, 613 So.2d 1232, 1233 (Ala.1992).

Discussion

Timeliness of the Statement of Lien

“Section 35-11-210, [Ala.] Code 1975, is intended to give every mechanic or materialman who performs any work or labor, or furnishes any material for any building or improvement on land by virtue of a contract with the owner thereof, or his agent, contractor, or subcontractor, a lien on the improvements and on the land. Elder v. Stewart, 269 Ala. 482, 114 So.2d 263 (1959).”
Bettinger v. Stephens Wholesale Bldg. Supply, Co., 487 So.2d 1369, 1370 (Ala.Civ.App.1986).
One of the requirements for the perfection of a materialman’s lien, is the filing of a verified statement of lien in the probate court of the county where the real property upon which the lien is to attach is situated. Ala.Code 1975, § 35-11-213. Section 35-11-215, Ala.Code 1975, sets the deadline for filing the statement of lien:
“The lien declared in this division shall be deemed lost unless the statement referred to in Section 35-11-213 shall be filed by every original contractor within six months and by every journeyman and day laborer within 30 days, and by every other person entitled to such lien within four months, after the last item of work or labor has been performed or the last item of any material, fixture, engine, boiler, or machinery has been furnished for any building or improvement on land or for repairing, altering, or beautifying the same under or by virtue of any contract with the owner or proprietor thereof, or his agent, architect, trustee, contractor, or subcontractor.”
(Emphasis added.) It is not disputed that Massey was an “original contractor” as that term is used in § 35-11-215. See generally Southern Sash of Huntsville, Inc. v. Jean, 285 Ala. 705, 710, 235 So.2d 842, 846 (1970) (“ ‘A materialman furnishing materials for a building under contract with the owner is an original contractor.’ ” (quoting Morris v. Bessemer Lumber Co., 217 Ala. 441, 443, 116 So. 528, 529 (1928))). There is a dispute in this case as to the date on which Massey performed “the last item of work” or furnished the “last item of ... material” and, therefore, whether Massey filed its statement of lien within the applicable six-month period.
*1274 Massey filed its statement of lien on November 12, 2008. More than six months earlier, on December 21, 2007, Massey had first performed work and provided materials pursuant to its agreement with Lee Land. Massey submitted an invoice to Lee Land on that same day, and Lee Land paid the amount shown on that invoice.
Massey provided additional materials and performed additional work, and billed Lee Land for the materials and the work, in early April 2008, which also was more than six months before Massey filed its statement of lien. Lee Land initially paid only half of what it owed for the work and materials Massey had provided in April 2008, apparently because Lee Land disputed the amount of materials that Massey had actually provided. Massey’s president testified at the trial that he had agreed to allow Lee Land to delay paying the remaining balance until the area of the paving job could be measured.
In October 2008, principals of Massey and Lee Land met at the job site and measured the amount of paving work that had been completed by Massey on the properties. Massey’s president testified during the trial that the measurements had revealed that Massey actually had provided more materials than it had estimated and for which it had billed Lee Land. Although it does not appear that that testimony was disputed by Lee Land, Lee Land paid Massey only a portion of the amount that had been billed by the last invoice submitted by Massey in April 2008, apparently either because Lee Land was not satisfied with the quality of the work or because it simply did not have the funds to pay the entire amount. Massey’s president testified that he had been informed that Lee Land would pay Massey the remaining balance after the properties were sold at auction, but the balance was never paid.[2]
Sometime after the referenced measurements had been taken in October 2008, but before Massey filed its statement of lien in November 2008, Massey performed some additional work for Lee Land. It is not disputed that the additional work was intended to correct problems that had arisen after the paving work had been completed in April 2008. It is not entirely clear from the record, but it appears that the corrective work was performed at Lee Commercial Park.
Although the testimony at trial was somewhat in dispute as to the cause of the problems with the paving work, that testimony and other evidence would support a conclusion that the problems could have been caused by defects in the paving work Massey had performed in December 2007 or April 2008. It is undisputed that Massey had provided Lee Land with an express one-year warranty, which had a start date of April 1, 2008, covering the paving work done at Lee Commercial Park, which appears to be where the corrective work was performed.[3] Moreover, Massey’s president testified that Massey did not charge Lee Land for the corrective work, and an exhibit submitted by Massey during the trial indicates that Massey’s statement of lien did not include amounts allegedly owed for that work. Based on all the evidence, which the trial court considered ore tenus, the trial court could have determined that Massey had intended to perform the corrective work free of charge in *1275 order to remedy problems with the paving work it had performed in December 2007 or April 2008.
Massey filed its statement of lien within six months of the corrective work Massey had performed. Massey argues that the date on which it performed that work was the date on which it performed “the last item of work” and furnished the “last item of ... material,” as those terms are used in § 35-11-215.[4]
It does not appear that the appellate courts in this state have expressly answered the question whether a contractor’s performance of corrective work, such as the work involved in the present case, extends the statutory deadline for the filing of a statement of lien. According to our supreme court, when applying a statute,
“[a] court must ascertain and give effect to the intent of the legislature in enacting the statute. Wright v. Turner, 351 So.2d 1 (Ala.1977); Locke v. Wheat, 350 So.2d 451 (Ala.1977). If possible, such intent must be gathered from the language of the statute itself, and only when the language of the statute is ambiguous or uncertain will [a] court resort to considerations of fairness or policy to ascertain the legislature’s intent.”
Advertiser Co. v. Hobbie, 474 So.2d 93, 95 (Ala.1985). Section 35-11-215 is ambiguous as to whether the “last item” of work or material has been provided upon initial completion of a contractor’s agreed-upon job or upon completion of corrective work performed at a later date pursuant to, for example, a warranty.
“Where one interpretation of a statute would defeat its purpose that interpretation will be rejected if any other reasonable interpretation can be given it.” Druid City Hosp. Bd. v. Epperson, 378 So.2d 696, 699 (Ala.1979). One of the legislature’s purposes in requiring the filing of -a statement of lien is to give notice to potential purchasers that a piece of real property may be encumbered by a lien. Fowler v. Mackentepe, 233 Ala. 458, 460, 172 So. 266, 268 (1937). That purpose could be defeated if a statement of lien is deemed timely filed more than six months after a contractor initially completes the work it has been hired to complete, based on the performance of later corrective work. We hold that the trial court in the present case did not err in concluding that, for purposes of perfecting the lien Massey claimed under the specific facts of this case, Massey had performed the last item of work and had provided the last item of materials upon initial completion of the paving work in April 2008 and not upon completion of the corrective work.
Holdings from other jurisdictions generally are in line with our conclusion. See Sam Rodgers Props., Inc. v. Chmura, 61 So.3d 432, 438 (Fla.Dist.Ct.App.2011) (“[RJemedial work such as warranty work, corrective work, [or] repair work ... does not extend the time for filing a claim of lien.”); Tym v. Ludwig, 196 Wis.2d 375, 387, 538 N.W.2d 600, 604 (Ct.App.1995) (“To be valid, a construction lien must be filed within six months of the last day labor or materials are furnished by the lien claimant. Warranty or repair work on an *1276 original installation does not extend the time for filing a construction lien. Thus, the time for filing the lien claim is measured from the date of the original installation, not from the date of the later repair work.” (citations omitted)); Woodman v. Walter, 204 Mich.App. 68, 70, 514 N.W.2d 190, 191 (1994) (stating that it was “join[ing] the majority of other jurisdictions” in concluding that the “period [for filing a claim of lien] commences on the date of completion of the original installation work and is not extended by the later performance of warranty work”); and Central Coast Elec., Inc. v. Mendell, 66 Or. App. 42, 45, 672 P.2d 1224, 1226 (1983) (“It would pervert the legislature’s purpose in fashioning the time limitation [for filing a claim of lien] to allow the time to be extended merely because warranty work was performed.”).

Timeliness of the Action to Enforce a Lien

■ Statutes covering the. same subject matter should be construed in pari materia, Ex parte Johnson, 474 So.2d 715, 717 (Ala.1985), and our conclusion in this case is buttressed by another Code provision governing the enforcement of a materialman’s lien. Section 35-11-221, Ala.Code 1975, provides that “[a]ny action for the enforcement of the lien declared in this division must be commenced within six months after the maturity of the entire indebtedness secured thereby.” According to our supreme court, “[a] debt is mature when it accrues so as to be due and payable.” Home Fed. Sav. & Loan Ass’n v. Williams, 276 Ala. 37, 41, 158 So.2d 678, 681 (1963).
Although Massey’s president testified during the trial that he had agreed to allow Lee Land to delay paying Massey the remaining balance owed for the paving work until after the paving measurements were taken in October 2008, the evidence would support &• finding that Massey considered the entirety of the indebtedness allegedly secured by a materialman’s lien to have accrued by April 2008, which was more than six months before Massey commenced its action to enforce the alleged lien. The testimony of Massey’s president indicates that Massey had billed Lee Land for all that Massey intended to bill, with the exception of payment for a final “seal” coat that was never installed, at the time Massey submitted the last invoice in April 2008. Massey’s president agreed that Massey had “finished the work” in early April 2008 and “want[ed] payment” at that time. The invoices themselves indicate that the amounts stated therein were immediately due and payable. Thus, the evidence would support a finding that the indebtedness for the paving work that Massey performed matured more than six months before Massey commenced the action to enforce a materialman’s lien.
Although Massey’s president testified during the trial that Massey’s attorney believed Massey should be awarded compensation for the extra paving materials and work that were revealed by the measurements taken in October 2008, the testimony also indicates that, immediately after the measurements had been taken, Massey did not expect compensation in addition to the amount Massey had already billed. Even if Massey had expected such compensation, the additional work and materials revealed by the measurements had been provided by early April 2008. Precedent from our supreme court indicates that any debt owed for the extra work and materials would have matured when the work and materials were provided. C & S Family Credit of Alabama, Inc. v. McNairy, 613 So.2d at 1233 (“[A] debt ordinarily matures on the date the last work is performed.”).[5]
*1277 The trial court’s judgment is due to be affirmed on the basis that the action to enforce the alleged lien was not commenced within six months after the maturity of the entire indebtedness allegedly secured thereby. See Williams, 276 Ala. at 42-43, 158 So.2d at 682-83 (additional work performed after a contractor had substantially completed plumbing work did not extend the time to commence an action to enforce an alleged materialman’s lien, which time began to run when the contractor had sent invoices to the owner for the total balance due); and Madison Highlands Dev. Co. v. Dean & Son Plumbing Co., 415 So.2d 1129, 1130 (Ala.Civ.App.1982) (“Although [the contractor] claims to have performed work on the property as late as November 1980, the record clearly reveals that the final bill for the work was issued in June 1980. The full balance was therefore due and payable more than six months before suit was commenced on February 25,1981.”).

Conclusion

The trial court in the present case did not err in determining that Massey’s statement of lien had not been filed within six months of Massey’s performing the last item of work or providing the last item of materials for the improvement of the properties. Moreover, the action to enforce the purported lien was not commenced within six months of the maturity of the entire indebtedness allegedly secured thereby. Accordingly, the trial court’s judgment is affirmed.[6]
AFFIRMED.
■ THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. The trial court also rejected Massey's claim that a portion of the properties had been. improperly conveyed after the action had been commenced.- Massey, however, does not argue that the trial court erred in rejecting that claim.

. It is not clear whether tire properties or any portion of the properties was sold at auction. See supra, note 1,

. There is no express warranty in the record covering the work done at Lee Gardens, and Massey’s president testified that he did not recall having issued one.

. There was testimony given during the trial indicating that, at the time of the trial, a final “seal” coat originally contemplated by the parties’ agreement still had not been applied to the paved surface, possibly calling into question a conclusion that the paving job initially had been "completed" in April 2008. Massey, however, does not rely on that fact in arguing that the trial court erred in finding that the last item of work and material had been provided more than six months before Massey filed its statement of lien. Rather, Massey argues only that the additional corrective work and materials provided therewith were the "last item[s]” as that phrase is used in § 35-11-215.

. As for the corrective work, the court notes that Massey did not bill Lee Land for that work, and the amount the trial court awarded Massey suggests that the trial court determined that Massey was not entitled to compensation for that work. Moreover, an exhibit submitted by Massey during the trial, which explained the amount of the debt that had been claimed on' the statement of lien, indicates that that amount did not include compensation for the corrective work. Thus, this court would reject any suggestion that the entire indebtedness allegedly secured by a materialmen’s lien did not mature until the corrective work had been performed or that Massey held a materialmen’s lien securing payment for the corrective work.

. Otis Elevator Co. v. Sheffield Realty Co., 205 Ala. 488, 88 So. 566 (1921), does not call for a different conclusion. In that case, our supreme court rejected an argument that the applicable deadlines for the enforcement of a materialman's lien should have been extended based on the existence of a one-year guarantee of the work that had been performed more than six months before the filing of the statement of lien and the commencement of the action to enforce a lien. Although in rejecting that argument the court noted that no work had been performed pursuant to the guarantee, the court did not express an opinion as to whether, had such work been performed, the applicable deadlines indeed would have been extended. In fact, the court appeared to question the soundness of the principle that warranty work done after initial completion of the job would have extended the applicable deadlines. 205 Ala. at 489, 88 So. at 567.